[L. A. No. 9964. In Bank.—November 26, 1929.]

EDWARD E. ATKINS et al., Respondents, v. GEORGE W. HUGHES et al., Defendants; L. W. HUGHES et al., Appellants.

Haas & Dunnigan for Appellants.

Halverson & Halverson and W. T. Kendrick for Respondents.

PRESTON, J.—In this cause it is ordered that paragraph V of the judgment, which purports to remove L. F. Hughes and G. C. Chase as directors of the Rock Creek Water Corporation, a corporation, be and the same is hereby stricken out. It is further ordered that the judgment in this action also be modified by deducting from the amount $9,767.10, the sum of $450, and that, as so modified, said judgment be and it is hereby affirmed, respondents to recover their costs on appeal.

This cause was reheard to give further consideration to the question of the power of a court of equity, in the absence of a statute, to remove a director of a private corporation and to declare his office vacant. But on the hearing counsel for each side conceded that the term of office as director of said two men had long since expired; that three annual meetings had been held since the date of said judgment and that the two defendants referred to had been re-elected to office in both the years 1928 and 1929 at the annual stockholders' meeting. The question, therefore, so far as this action is concerned, has become moot. (*Childress* v. *Dinkelspiel Co.*, 203 Cal. 262 [263 Pac. 801].) But for the presence of other questions in the cause it would be our duty to dismiss the appeal. (*Weiss* v. *City of Los Angeles*, 190 Cal. 576 [213 Pac. 979].)

There are, however, other questions involved, as to which we are satisfied with our conclusion heretofore announced and, accordingly, we hereby adopt as the opinion of this court, the former opinion written in this case by Mr. Justice Curtis, eliminating therefrom only the discussion of the question above declared to be moot, which former opinion, as here re-adopted, is as follows:

"Action by certain of the stockholders of the Rock Creek Water Corporation against said corporation and five individual defendants. Four of said individual defendants— L. F. Hughes, H. J. Hammond, Stewart Gibson and G. C.

Chase—were directors of said corporation and, with the plaintiff W. A. Phillips, formed the board of directors of said company. The fifth individual defendant was George W. Hughes, who died subsequent to the commencement of this action, and the same has been dismissed as to his personal representative.

"The facts admitted by the pleadings or proven at the trial show that the Rock Creek Water Company is a corporation organized under the laws of the state of California; that said corporation is a mutual water company, and was organized by the owners of certain water rights for the purpose of facilitating the control of said water and the distribution of the same for domestic and irrigation purposes among its owners in proportion to the amount owned by them respectively. Some time prior to the annual meeting of said corporation in the year 1924 George W. Hughes, through the purchase of the Hammond and Boyce properties and the stock in said corporation representing water used on said properties, became the owner of a large amount of the capital stock in said corporation, and after said purchase the said George W. Hughes and his son, the said L. F. Hughes, owned a majority of the capital stock of said corporation. At the annual meeting of said corporation held in said year the following-named persons were elected directors of said company for the ensuing year: the said L. F. Hughes, the son of said George W. Hughes; Stewart Gibson, the private secretary of George W. Hughes; H. J. Hammond, from whom he purchased the Hammond and Boyce ranches, and who acted as foreman or ranch superintendent of said George W. Hughes up to May 15, 1925; G. C. Chase, who became such foreman after May 15, 1925, and W. A. Phillips, one of the plaintiffs in this action, who represented the minority stockholders of said company upon said board of directors. The directors organized by electing L. F. Hughes president, W. A. Phillips vice-president and G. C. Chase secretary and treasurer of said company. The by-laws of said corporation provide that 'Delivery (of water) to each (stockholder) shall be made at some point on the main ditch.' The delivery of said water to the stockholders was made by a zanjero, and it was usually run into small equalizing or distributing reservoirs, from which the water was drawn

in a more or less constant flow, these reservoirs not being intended for storage purposes, but rather for distributing purposes. These reservoirs were not owned by the corporation, but by the stockholders, or groups of stockholders, individually, nor were the pipe lines or ditches connecting the main ditch with said reservoirs owned by the company, but by the individual stockholders. There were at least four of these reservoirs, referred to in the evidence as Kendrick reservoirs Nos. 1 and 2, the Hammond reservoir and the Boyce reservoir. The latter two reservoirs had been used by the owners of the Hammond ranch and the Boyce ranch, individually, for some years prior to the time these properties were acquired by George W. Hughes. They were situated below the lowest terminus of the company's ditch and from ten to fifteen feet lower than the lands of any of the stockholders except said lands of George W. Hughes purchased from Hammond and Boyce. About March 25, 1925, and after George W. Hughes had acquired the Hammond and Boyce ranches, and while he was the owner thereof, the company began enlarging and recementing said reservoirs at the expense of the corporation. On the 7th of April following, at a meeting of the board of directors of said company on that day, deeds to sites of each of said reservoirs, executed by said George W. Hughes in favor of said corporation, were presented to said board of directors. By resolution these were accepted by said board of directors and it was ordered that two reservoirs be constructed upon the land thereby conveyed to be used for the storage of water for irrigation purposes, the cost of such construction to be paid by checks drawn on the funds of said corporation. A further resolution was passed by said board of directors at said meeting levying an assessment of ten cents a share on each share of the capital stock of said corporation, 'for the purpose of paying expenses, conducting business and paying debts of this corporation.' These resolutions were adopted by the affirmative vote of directors Hammond, Gibson and Chase, director Phillips voting in the negative. At the time of the adoption of the said resolutions there was in the treasury the sum of $1,915.62, which was ample for conducting the ordinary business and paying the debts of said corporation. The purpose of levying said assessment was to furnish money

'to construct, improve, enlarge and cement reservoirs upon the property known as the "Hammond Ranch" and the "Boyce Ranch." ' . . . Thereupon, plaintiffs commenced this action to restrain the collection of said assessment; to declare void the proceedings of the board of directors accepting the deed to said reservoir sites and ordering the construction of the reservoirs thereon; for an accounting of the money expended by the directors for the construction, enlargement and cementing of said reservoirs, and for the removal of the defendant directors. An answer to said complaint was filed on May 29, 1925. On June 12th following the board of directors of said company met and rescinded the resolutions adopted by them on April 5, 1925, accepting said deeds, ordering the construction of said reservoirs, and levying the assessment of ten cents per share to pay the cost thereof. Immediately thereafter and at the same meeting the said board of directors adopted similar resolutions to those previously adopted by them on April 5, 1925, whereby they sought to accept said deeds from George W. Hughes, authorize the construction of said reservoirs upon the property therein described at the cost and expense of the corporation, and levy an assessment of ten cents per share, and for the same purpose as that designated in the former resolution levying the assessment of April 5, 1925. The action taken by said board of directors at the meeting of said board on June 12, 1925, rescinding the prior resolutions adopted by them on April 5, 1925, and adopting new resolutions in their stead, so the court subsequently found, was to 'avoid and defeat the restraining order heretofore issued' in this action whereby said defendants were enjoined and restrained from carrying into effect the resolutions of April 5, 1925. After the adoption of said resolutions by the board of directors at their meeting of June 12, 1925, and on July 13, 1925, the plaintiffs filed an amended and supplemental complaint, in which they set forth in full the proceedings taken at the meeting of said board of directors on June 12, 1925, including the action of said board in rescinding its former resolutions and in adopting the subsequent resolutions already referred to. The relief prayed for in said amended and supplemental complaint was that the new assessment be declared void and the defendants restrained from col-

lecting the same, for an accounting of the money expended by them upon the Hammond and Boyce reservoirs, the repayment thereof to the corporation, for the removal from office of said directors, and for general relief. To this pleading the defendants filed their answer. To a large extent the allegations of the complaint and those of the amended and supplemental complaint were admitted by the defendants' answers. Those that were not so admitted were, in the main, found to be true by the court. Upon these findings the court rendered judgment in plaintiffs' favor in accordance with the prayer of their amended and supplemental complaint. From this judgment the defendants L. F. Hughes, H. J. Hammond and G. C. Chase have appealed.

"The first point raised by appellants in their attack upon the judgment is that there is no evidence to support the finding of the trial court that George W. Hughes and L. F. Hughes conspired to elect directors of said corporation who were under their domination with the intent and purpose that said directors would adopt and pass said resolutions, the effect of which was to bring about the construction of said reservoirs for the use and benefit of the Hughes, but at the cost and expense of the corporation. It appears to us that whether or not such a conspiracy was formed is not a matter of material importance in this action. If the acts of the directors in passing said resolutions were legal, then it is a matter of no consequence that the Hughes conspired to cause the same to be adopted by the board of directors of said company. On the other hand, if said directors acted illegally in the enactment of said resolutions, then they are invalid for any purpose and this would be their effect whether the Hughes conspired to secure their adoption or not. In our opinion, therefore, the question of first importance in considering the validity of said judgment is to determine whether the board of directors of said company in the adoption of said resolutions acted within the scope of their lawful authority.

"Appellants contend that there was nothing illegal in the acts of the directors in accepting deeds to the reservoir sites from George W. Hughes and in ordering the construction of reservoirs thereon at the expense of the corporation, and that if such acts were legal the assessment

levied for the purpose of paying the cost of constructing said reservoirs was free from any taint or fraud or illegality. In support of this last-mentioned contention the appellants assert in their brief that 'The board of directors, in taking such action, were exercising the authority with which they were clothed to conduct the business of the company to the best of their judgment in conformity with the charter and by-laws of the company, as well as its needs. If it accepted deeds to real property from G. W. Hughes, the corporation was not injured. On the other hand, having accepted deeds to land from said G. W. Hughes, and it being within the discretion of the board of directors under its charter, to conduct and develop the affairs of the corporation, and it being their best judgment that the reservoirs in question be constructed upon the lands so conveyed to the corporation, these acts could not be complained of nor would they be considered by the ordinary prudent business man as being unlawful.' There can be no question that under the purposes for which said corporation was formed, as set forth in its articles of incorporation, it has the right to acquire water, water rights, dams, ditches and canals for the development, storage and carriage of water 'in connection with the principal object and purpose of this corporation, which is generally specified to be the conduct of a mutual water company.' While the construction of reservoirs is not expressly mentioned in the purposes for which said corporation was formed, yet from the broad general terms used in defining said purposes, we have no doubt if the construction of a reservoir, or a number of reservoirs for that matter, would result in increasing the water supply of the company, or be of any substantial advantage to the company in its business of furnishing water to its stockholders, that the right to exercise such power was given to said corporation by its articles of incorporation. But this right must be exercised for the benefit of the stockholders generally and not for the benefit of some favored few of said number. As we have stated above, the by-laws of the corporation provide that water shall be delivered to each stockholder at some point in the main ditch. The evidence shows that this has been the universal practice of the company since its organization. The water was then conducted in most instances through pipe lines or ditches to private

reservoirs, built and paid for by individual stockholders who were served by the water stored therein. Upon each of the Hammond and Boyce ranches at the time the same were purchased by G. W. Hughes there was located a reservoir used by the owner thereof for the purpose of facilitating the distribution of water upon his land. The board of directors by the proceedings complained of attempted at the expense of the company to either rebuild these two reservoirs or to construct new ones upon the sites occupied by the original ones. These reservoirs were for the exclusive and individual use of G. W. and L. F. Hughes. The other stockholders of the company were not benefited in any manner by this expenditure of the company's funds. Their lands were located above these reservoir sites, and could not be irrigated with water drawn therefrom even had said stockholders desired so to do, or had the Hughes permitted such use. Then, also, the other stockholders had been compelled to build and pay for their own reservoirs, and there is no evidence that said board of directors intended to reimburse them for money so expended, or to maintain or keep in repair the reservoirs of the minority stockholders already constructed. The construction by said board of directors of the reservoirs on Hughes' property at the expense of the corporation was the use of the funds of said corporation to improve and benefit the private property of Hughes. It was an illegal and an unlawful use of the corporate funds and it resulted in a detriment to every other stockholder of the corporation. While the board of directors are clothed with broad powers and are given wide discretion in the management of the affairs of the corporation, and the expenditures of its funds, it was an abuse of that discretion for said board to use the corporate funds to improve the property or to advance the individual interests of any one or group of stockholders to the detriment of the balance of the stockholders. This proposition of law seems so simple and just that no citation of authority is necessary to support it. As we view the facts of this case there is no question but that the board of directors acted illegally in constructing said reservoirs with the funds of said company. It follows, therefore, also that the assessment levied by the directors for the purpose of meeting the cost of constructing said reservoirs was invalid, and the action of the board of

directors in levying the same was illegal and cannot be upheld.

"The further point is made by appellants that the judgment is erroneous in holding that the directors of the corporation were guilty of fraud in building the reservoirs, and that there was no testimony to support the findings of the court that the corporation exceeded its power in building said reservoirs. We think that there is ample evidence to support the conclusion and finding of the trial court that the directors, other than director Phillips, were guilty of fraud in constructing said reservoirs for the exclusive use of the Hughes and paying for such construction out of the funds of said corporation. The fraud is so apparent and manifest that it is unnecessary to go into any lengthy details or give any extended reasons for so holding. We might state at this time that the capital stock of said corporation was divided into 48,000 shares of the par value of one dollar per share, of which the members of the Hughes family were the owners of slightly over one-half. Being the owners of a majority of the capital stock, they were able to control the election of the board of directors. The board of directors after their election attempted to foist upon the stockholders the entire cost of improvements constructed for the exclusive use of George W. Hughes and family. The court found that the directors had paid in the construction of said reservoirs almost $6,000 from the treasury of said corporation and had otherwise misappropriated the funds of said company in an amount, including that paid in the construction of said reservoir, aggregating the sum of $9,767.10. To hold that this could be innocently done, under the claim that the directors were honestly endeavoring to carry on the business and affairs of the company, would be to challenge the credulity of human nature. A mere recital of the bare facts will, we believe, convince any person of ordinary intelligence of the bad faith of the majority of the directors, and that they designedly attempted to despoil the minority stockholders for the benefit of George W. Hughes and L. F. Hughes.

"The final objection made by appellants to the judgment herein is that the trial court in rendering judgment in favor of the corporation and against said defendants for moneys wrongfully and illegally paid out by the defendants,

included in said amount the following items: $750 for the Boyd reservoir site and $450 to the attorneys representing the defendants in this action for services rendered in defending this action. ■ We are of the opinion that the first of these items was properly included in the judgment. The testimony regarding the Boyd reservoir site is not as full as we might wish. The price paid therefor was $750, and there was evidence that it was worth not to exceed $100. It is not clear as to just what use was to be made of the land purchased. The company had no use for it as a reservoir site. It was above the ditch of the company, was arid in character and was underlaid with bedrock three or four feet from the surface. It evidently could not be put to agricultural purposes. In this connection we might refer to a statement which the respondent Phillips testified to as having been made by the defendant L. F. Hughes, in which the latter was reported to have said, 'I am going to build about ten reservoirs before I get through. Going to put on an assessment every month. I hope the other stockholders won't suffer too much. I am going to break Kendrick.' The trial court may well have concluded that the Boyd reservoir site was purchased with the view of constructing thereon a reservoir for the same purpose as the reservoirs constructed on the Hammond and Boyce sites were intended to be used. If so, this expenditure would be in the same class as those incurred in the construction of the Hammond and Boyce reservoirs, and the judgment that the money expended therefor be repaid to the corporation was a proper one. ■ The item of $450 was not mentioned or referred to in the complaint. It could not have been for the reason that it was not paid out until after the commencement of this action. Neither was it mentioned or referred to in the amended and supplemental complaint. It could not, therefore, be recovered in this action. The judgment, therefore, should be modified by deducting this sum from the amount of the judgment."

Curtis, J., Seawell, J., Richards, J., Shenk, J., Waste, C. J., and Langdon, J., concurred.