[Civ. No. 15331.   Second Dist., Div. Three.   Sept. 6, 1946.]

MEL E. ROGERS, Respondent, v. WALTER E. SMITH et al., Appellants.

J. G. Moser for Appellants.

Forrest A. Betts and William J. Currer, Jr., for Respondent.

SHINN, J.—This is an appeal from an order confirming the ex parte appointment of a receiver and continuing the appointment pendente lite.   The action is against Walter E. Smith, Thelma I. Smith, individually, and also as copartners doing business as Keystone Tool & Supply Company, as well as certain defendants sued under fictitious names.   The first cause of action was for money had and received in the sum of $36,800.   The second cause of action was for the same amount alleged to have become due plaintiff for services ren-

dered to defendant. It was alleged in the third cause of action that in February, 1944, defendants employed plaintiff "as a consulting and managing engineer, for the purpose of securing for defendant copartnership a source of supply for the construction of electric motors to be used as ammunition booster units for .50 caliber machine-guns for sale to the United States Government"; that pursuant to said agreement plaintiff secured said source of supply and "continued to maintain a liaison relationship between defendants and said source of construction and supply of said motors, and thereafter and during the month of January, 1945, the plaintiff continued, as a part of his services as a consulting engineer and manager, and in accordance with the contract between the parties, to assist in managing the business relationships relative to said electric motor and ammunition booster equipment so as to accomplish a maximum production on behalf of defendants of said equipment for sale to the United States Government." It was alleged that defendants agreed to pay plaintiff $3.00 for each electric motor purchased by them during the continuance of the relationship, that the same existed to the 15th day of June, 1945, and that they also agreed to pay him the amount of his living and traveling expenses while he was away from California in his work. It was alleged on information and belief that during the life of the contract defendants purchased and sold to the United States Government approximately 17,500 motors, and that by reason thereof they became indebted to plaintiff in the sum of $52,000, of which they had paid only $16,700, leaving a balance of $36,800. It was further alleged that defendants deny all liability to plaintiff. The fourth cause of action was for money had and received in the amount of $2,000. A fifth cause of action was for the sum of $1,700 due under an alleged agreement of defendants to pay plaintiff $100 per month for the use of his car and $300 as the expense of a trip he made to New Jersey. It was alleged in the complaint on information and belief that the defendants Walter E. Smith and Thelma I. Smith are insolvent and that the copartnership has no cash capital. The prayer of the complaint was for an accounting for the purpose of disclosing the number of electric motors purchased by defendants, that a receiver be appointed of the property of defendants, that defendants be enjoined from collecting any debts owing to the Keystone Tool & Supply Company or from investments made by the

copartnership; that the property of the copartnership be sold, and that from the procceds plaintiff's claim be paid. The prayer also sought a declaration of the rights of the parties under the agreement. The complaint listed properties alleged to belong to the defendants Walter E. Smith and Thelma I. Smith, who constituted the partnership, and alleged the same to be of the value of about $50,000. An affidavit of plaintiff was filed in support of the application for appointment of a receiver, which stated that plaintiff was informed and believed and upon that ground alleged that unless a receiver were appointed, defendants Smith would transfer and dissipate their property so as to render any judgment that might be rendered unenforceable. It was alleged upon information and belief that during the past two years, and at times unknown to plaintiff, Walter E. Smith had transferred to himself partnership funds; that he caused a corporation to be organized and, on information and belief, the following: That he transferred to it some $40,000 without consideration, a part of which he had received from the partnership and the remainder from other sources, although the corporation had issued no stock; that the partnership had also transferred to Walter E. Smith some $50,000 without consideration, and had manipulated the corporation and the partnership so that at times there were cross accounts between them; that Walter E. Smith had used $10,000 of the partnership money for the purpose of promoting a rodeo and made large profits therefrom which he did not pay over to the partnership; that the partnership during the year ending July 31, 1944, had net sales of $5,561,736.87 and should have made $600,000 as profits, but only admitted making approximately $135,000 and that the difference of some $465,000 was money which Walter E. Smith had taken in the guise of expenses and expense accounts which were never incurred. There were extended allegations that Walter E. Smith had promised plaintiff various other attractive jobs without any intention of providing them for him. It was alleged that the assets of the partnership had been transferred and handled by Walter E. Smith as stated for the purpose of cheating, wronging and defrauding creditors of the partnership, and particularly the plaintiff. As to the moneys alleged to have been drawn from the partnership, it was alleged that said defendant "has disposed of, used, *or* transferred *or* concealed the said funds." It was stated in the affidavit that Walter E. Smith had

planned to take a business trip to New York, but that when he learned the present action had been instituted he went to San Francisco to avoid service of papers and from there to New York, and that defendant Thelma I. Smith had left town at a time or times unknown to plaintiff, and it was represented to the court that unless a receiver be appointed immediately, the assets of the defendants would be dissipated and transferred beyond reach of the process of the court. It was also alleged in the complaint as a reason for the appointment of a receiver that the defendants ''are incapable of properly managing and settling said copartnership business.'' Upon this showing a receiver was appointed ex parte.

At the hearing for confirmation of the appointment, affidavits were filed by the attorney and the accountant of defendants. It was shown in the affidavit of the attorney that Walter E. Smith had gone East on a business trip arranged at least 10 days prior to the filing of the complaint herein, and that Mrs. Smith had been in Los Angeles and in her home where she could have been served with process at any time prior to the appointment of the receiver. The affidavit of Paul P. Hertz stated that he had been employed since September, 1943, as accountant for defendants and was presently so employed and thoroughly familiar with the business; that defendants Walter E. and Thelma I. Smith are the sole owners of the partnership; that a corporation was organized to conduct some of the business of the partnership and $50,000 was transferred to the corporation, but that the defendants decided to retain all business in the partnership and all funds which had been received by the corporation were retransferred to the partnership; that the partnership was then doing a business of between $400,000 and $500,000 a month and meeting its obligations as they fell due, and that the net profits for the year ending July 31, 1944, amounted to $155,000. The affidavit listed the assets of the defendant substantially as they were listed in the complaint and placed a value upon each of them. The assets included a 37 per cent interest in a restaurant in Hollywood, an interest in Taylor-Smith Sales Company, handling metal furniture and luggage, a residence in Los Angeles, a Cadillac automobile, an Oldsmobile automobile, capital stock of the Western Harness Racing Association, a claim against the United States Government of $100,000, also horses, sulkies, saddles, and equipment, moneys due, and a license manufacturing right, the total value of the assets

being stated as in excess of $394,500, not taking into account any sums due from debtors of the partnership. It was denied that any sums had been transferred in any manner for the purpose of defrauding creditors, and it was denied that it was contemplated to transfer funds for that purpose or for any other purpose whatsoever. Attached to the affidavit was a photostat of a contract of employment of plaintiff, as consulting engineer, under which he was to receive $1.50 per motor purchased from a certain manufacturer and 25 per cent of any savings on the purchase price below $25 per motor. He was to receive $1,000 per month during the time he was in the East, to be charged against his commissions, and also his expenses while in the East, expediting delivery of the motors. It was alleged that under the agreement plaintiff had been paid over a period of 18 months $35,668.08; that the defendants owed plaintiff nothing, and that plaintiff was indebted to the defendants in the amount of approximately $12,800.

At the time of the hearing defendants had not answered the complaint, but before notice of appeal was given, for the purpose of aiding the court in fixing the amount of the bond on appeal, the affidavit of Walter E. Smith was filed, in which he denied any indebtedness to plaintiff, denied all of the allegations of the complaint, listed the assets of the defendants as of the value of between $300,000 and $400,000, exclusive of sums due the partnership, and stated that the total obligations of the partnership were less than 10 per cent of the total worth of defendants Smith.

The ex parte order appointing a receiver, and which was later confirmed, authorized the receiver to take, care for, and keep possession of all property of the defendants, as described in the complaint, namely, the residence of defendants, their automobiles, their bank accounts, their interests in the restaurant and other business, their horses, the $100,000 claim against the government, and the accounts receivable of the Keystone Tool & Supply Company.

Respondent cites as support for the order, section 3439.10 and allied sections of the Civil Code, which deal with fraudulent conveyances, and the allegations of his complaint and affidavit that the defendants are insolvent, that they have made and are contemplating conveyances in fraud of their creditors and are incapable of managing their business.

Plaintiff's entire argument, as we shall point out, is predi-

cated upon a nonexistent state of facts and it would be idle for us to discuss principles of law that would be applicable to a purely hypothetical case. The attempt to make out a case of equitable cognizance was wholly unsuccessful and the action must be viewed as one at law for the recovery of a debt in which the remedy of attachment was available to plaintiff and would have been adequate. It would have given plaintiff security if it was security he sought. ▮ Receivership is an extraordinary remedy, to be applied with caution and only in cases of apparent necessity, and where other remedies would be inadequate. It is not a substitute for attachment, and may not be resorted to for the reason urged by plaintiff, in his oral argument, that an attachment would have been more expensive. Only a nominal bond of $1,000 was required on the appointment of the receiver, which would have been an insufficient amount for an attachment bond if plaintiff had proceeded as vigorously through attachment as he has through the use of the receivership, and had attached all the defendants' property. The saving of expense is a poor excuse for the oppressive measures which were taken for the ostensible purpose of obtaining security, nor is it at all certain that the methods used will eventually prove the less expensive.

▮ The showing made by plaintiff furnished no ground for the appointment of a receiver. He alleged upon information and belief that defendants are insolvent, but his further sworn allegations proved the contrary. In addition to listing in the complaint assets which he valued at $50,000, and which defendants valued at nearly $400,000, plaintiff in his affidavit alleged that during the year ending July 31, 1944, the copartnership had made a profit of $600,000, $135,000 of which the corporation retained and $465,000 of which was taken by Walter E. Smith personally as reimbursement for expenses which had not been incurred, and it was alleged that Walter E. Smith had received from the partnership further sums amounting to some $60,000. Neither the complaint nor the affidavit of plaintiff alleged that the defendants were indebted to anyone except himself. Defendants denied their indebtedness to him and at the time of the hearing there was no evidence before the court that they had any other creditors. The affidavit of Walter E. Smith that the indebtedness of the partnership did not exceed $30,000 or $40,000 was not before the court at the time of the hearing. Although plaintiff's sworn statements specifically stated that large sums of money

had been accumulated by defendants and that they were possessed of numerous valuable properties, there was no allegation, even on information and belief, that defendants had placed a single dollar or any item of property beyond their control or beyond the reach of creditors. Plaintiff seemed to know pretty well what properties defendants owned and where they were located. Walter E. Smith and Thelma I. Smith were the copartnership, Keystone Tool & Supply Company; the corporation which held $50,000 for a time and then returned it to the partnership was a corporation in name only, and a mere instrument of the defendants. If partnership funds were shifted to Walter E. Smith, the real owner of the business, and plaintiff's alleged debtor, it would have been of no more concern to creditors of the partnership than the transfer by a debtor of a roll of bills from one pocket to another. The intangible and elusive nature of plaintiff's accusations is illustrated by the allegation that defendant Walter E. Smith had received large sums from the partnership and "has disposed of, used, *or* transferred *or* concealed the said funds for the purpose and with the intent of hindering, delaying, and defrauding his creditors and the creditors of said Keystone Tool & Supply Company." The allegations of the complaint, "that the defendants are incapable of properly managing and settling said copartnership business" and that the assets of the partnership and the partners "will be lost, destroyed, dissipated, reinvested or otherwise wasted" would have been more appropriate if the application had been one for the appointment of guardians for defendants Smith and, in view of plaintiff's specific allegations as to the successful operation of their business, should be ignored.

It is unnecessary to discuss additional reasons urged by appellants for a reversal of the order.

The order is reversed for the reason that the appointment of the receiver was wrongful and without probable cause and for further proceedings and the settlement of costs in conformity with our holding.

Desmond, P. J., concurred.

A petition for a rehearing was denied October 1, 1946, and respondent's petition for a hearing by the Supreme Court was denied October 31, 1946.