[Civ. No. 25536. Second Dist., Div. Two. May 4, 1962.]

GEORGE A. STARBIRD et al., Plaintiffs and Appellants, v. JACK LANE et al., Defendants and Respondents.

Francis M. Reiter, Ellis D. Reiter and Robert J. Sullivan for Plaintiffs and Appellants.

Gold, Sturman & Gold, J. George Gold and J. Howard Sturman for Defendants and Respondents.

HERNDON, J.—Plaintiffs appeal (1) from a judgment entered in favor of 13 defendants after their general demurrer to a fifth amended and supplemental complaint had been sustained without leave to amend and (2) from an order dismissing the action as to defendant Malibou Lake Mountain Club, Ltd., a corporation, and three other defendants, after the demurrer of the three individual defendants to the fifth amended and supplemental complaint had been sustained *with* leave to amend and plaintiffs failed to amend within the time allowed.

The action was commenced on November 19, 1959, by 15 stockholders and members of the defendant club who filed a

complaint seeking declaratory relief, the appointment of a receiver, removal of directors, and an injunction. It named the club and 22 individuals as defendants. On November 30, 1959, and prior to service of summons on any of the defendants, the same plaintiffs filed a first amended complaint for the same relief against the same defendants. On the same date plaintiffs also caused to be issued an order directed to defendant Malibou Lake Mountain Club, Ltd. (hereinafter generally referred to as "the club") to show cause why a receiver should not be appointed to take possession and operate its corporate assets.

Demurrers of the individual defendants to the first, second, third and fourth amended and supplemental complaints were sustained with leave to amend. The club filed its answer to the fourth amended and supplemental complaint, controverting the allegations thereof. Plaintiffs' application for the appointment of a receiver pendente lite was heard and *denied* at the time the demurrers of the individual defendants to the fourth amended and supplemental complaint were sustained.

On October 26, 1960, 11 of the remaining plaintiffs filed their fifth amended and supplemental complaint seeking the removal of directors and the appointment of a receiver. This pleading was substantially the same in form and content as the previous complaint. Since the filing of the original complaint, three of the plaintiffs have withdrawn from the action and one has died without substitution of a representative. Only 17 of the individual defendants are named in the last complaint. It appears to be undisputed that Fred C. Sammons, one of those named therein, died prior to the filing of the fifth amended and supplemental complaint.

Upon the filing of the fifth amended and supplemental complaint, 13 of the defendants (12 of whom are alleged to be *prior* directors of the club, and one Reid, who is identified merely as the agent of 11 of the prior directors) demurred generally. Their demurrer was sustained *without* leave to amend and judgment was entered in their favor on December 9, 1960. Defendants Smith, McHaffie and Edeson, alleged to be directors at the time the fifth amended and supplemental complaint was filed, demurred both generally and specially. Their general demurrer was sustained *with* leave to amend. Upon motion, after failure of plaintiffs to amend within the time allowed, the action was dismissed in respect to these defendants and the club on December 14, 1960. Plaintiffs appeal from the judgment and from the order of dismissal.

They also purport to appeal from the order sustaining the demurrer of the 13 defendants without leave to amend, which order is not appealable.

## Question Presented

The question presented on this appeal is whether or not the fifth amended and supplemental complaint states a cause of action against any of the named defendants, and whether the court erred in sustaining the general demurrer of 13 of them without leave to amend. Plaintiffs characterize their action as *derivative* in that they assert that its purpose is to seek redress for wrongs alleged to have been perpetrated against the corporation and its stockholders by certain former directors and by the individual defendants who are alleged to be acting in concert.

It is elementary law that in determining the sufficiency of the complaint we must assume the truth of the facts therein stated, and construe its averments liberally with a view to substantial justice between the parties. (Code Civ. Proc., § 452.) Appellants, in their opening brief, make a recital of facts under the heading "Factual Background," a substantial portion of which recital we do not find set forth in the complaint or supported by the record. The essential allegations of the fifth amended and supplemental complaint are as follows:

## Allegations of Complaint

The defendant club is and has been a corporation operating a country club, club house and club facilities in Los Angeles County. For many years it has been the owner of about 255 acres of real property. There are 1,348 shares of capital stock issued and outstanding. Plaintiffs own a total of 156 shares.

At the time the original complaint was filed, the defendants Jack Lane, Anthony Coldewey, Jr., Edward Chandler and Walter P. Johnson were directors of the club. On March 19, 1960, defendants Kenneth D. Smith, Gilman R. McHaffie, Arthur Edeson and Edward Chandler were elected as members of the board of directors "by reason of a purported election . . . which was supervised, controlled, directed, manipulated and accomplished at a purported annual meeting of the stockholders of the said corporation, by and under the direction of the defendant Kenneth D. Smith, and in concert with the other defendants named herein." The purpose of this purported meeting and election was to avoid the effect

of this action. Edward Chandler thereafter resigned and defendants Smith, McHaffie and Edeson "caused to be appointed John Taft and George Fitzhugh."[1] Taft and Fitzhugh "are under the control and domination of the defendant Smith."

"That all of the defendants named herein as directors, and each of them, have been guilty of fraudulent and dishonest acts and gross abuse of authority and discretion with reference to the conduct of the affairs of the club as more particularly set forth herein."

From 1953 to the filing of this action, "the records and books of account of the club were negligently and fraudulently kept by the defendants, and each of them, as directors and officers in that the said records did not correctly reflect the true financial condition of the corporation, the correct stock issuances and correct minutes and bylaws in the following particulars, among others:"

(1) The records, if correctly audited, will show current liabilities in excess of $50,000, which is in violation of the bylaws and places the club in a dangerous financial position; (2) the records, if correctly audited, will show that through manipulation of the accounts and books by its directors, the club has been operating at a loss rather than at a small profit as reported to stockholders; (3) between 1953 and 1959 obligations were incurred by the club to stockholders, members and licensees which are not shown in the accounts and books because, "as plaintiffs are informed and believe," they would show an increase in liabilities and inability of the club to pay; (4) the stock records show only 1,348 shares outstanding as of October 14, 1959; it appears from "legends" in the corporate records that there is a "great probability" that there is more stock issued and outstanding than the mentioned 1,348 shares; and "as plaintiffs are informed and believe" the defendants know the whereabouts thereof, but conceal it in order to protect their majority control of stockholders meetings; (5) because the corporation does not maintain copies of its minutes and bylaws in its principal office, it cannot be ascertained, with certainty, who are members, stock-

---

[1] The complaint does not allege the authorized number of directors, but a copy of the by-laws filed as an exhibit attached to the third amended complaint provides for a board of seven directors. The complaint leaves it completely unclear how two persons were appointed to replace one, or how three of six remaining directors could have forced through an appointment contrary to the views of the other three. Neither Taft nor Fitzhugh is named as a defendant in this action.

holders or officers of the club, or the extent of their authority. (6) "Shortly after the present directors were installed in office, resolutions were passed, or fraudulently caused to be passed by the stockholders, ratifying, condoning and approving the aforementioned abuses, negligence and fraud of their predecessors in office."

All of the defendants, and each of them, had direct and intimate knowledge of the deficient condition of the records and matters stated in the complaint, and each knew that notices of such conditions were given and a demand to correct the same was made. Further notices would be futile and of no avail.

Despite notice to the corporation, its board and its officers, the matters hereinafter alleged were allowed to persist to the detriment of plaintiffs and stockholders in like situation. When the defendants Smith, McHaffie, Edeson and Chandler were elected to the board of directors, they knew that demands had been made by plaintiffs upon them and their predecessors in office to ascertain the true financial condition of the corporation, to obtain true and correct books and records and to correct the books and records. Despite the request and demands of plaintiffs, they failed, refused and neglected to do so, but on the contrary, condoned the malfeasance of their predecessors in office.

The present board of directors is not acting independently and in good faith, but, on the contrary, is under the direct control of defendants Kenneth Smith and Walter Reid, who are the agents of defendants Jack Lane, Anthony Coldewey, Jr., Walter P. Johnson, L. D. Ingham, Fred C. Sammons, Watson C. Tapping, Anson C. Depue, Clyde Campbell, Whitsed Laming, Dan Waldschmidt, C. C. Woods and Leonard Dotson, who are past directors of the club and have served as appointed members of various purported committees under the control and domination of defendant Smith.

The purpose, design and intent of the defendants named above, all acting in concert, is to manipulate the affairs of the corporation so that plaintiffs, and other stockholders and members similarly situated, will be compelled to voluntarily sell or be wrongfully deprived of their stock and property rights.

Since the filing of the original complaint, defendants Kenneth Smith and Walter Reid have "prevailed" on the board of directors to expel some of the plaintiffs from club membership without cause or justification and for no reason other

than their participation in this action, and said defendants have threatened the rest of plaintiffs with expulsion for like reason.

By reason of the foregoing facts, the defendant directors are not fit for or capable of fulfilling their trust of office and should be removed and the defendants named as former directors, officers or committee members should be ''forbidden to hold any directorship or officership'' for such time as the court deems wise and expedient. Great and irreparable damage has been done and will continue to be done unless the court appoints a receiver to preserve the assets of the club; there is no other adequate remedy at law.

The prayer is that the present directors be removed from office and a new board installed by such processes as the court decrees; that all former directors, officers and committee members mentioned in the complaint as defendants be forbidden to hold an office in the club under such terms and conditions as the court may deem just, and that a receiver pendente lite be appointed.

### *The Remedy Sought to Be Invoked*

As stated in their opening brief herein, ''the remedy chosen by plaintiffs for the rectification of the abuses complained of is governed by sections 834 and 811 of the Corporations Code. . . . The reason for our use of this section [§ 811] was that we wanted to be sure of our attack upon the defendant directors; because, before 1931 it was doubtful whether the courts had power to remove a director who had proved unfaithful to his trust, and declare his office vacant. (*Atkins* v. *Hughes,* 208 Cal. 508 [282 P. 787].)''

Section 811 of the Corporations Code, enacted in 1947, provides as follows: ''The superior court of the county where the principal office is located may, at the suit of shareholders holding at least 10 percent of the number of outstanding shares with or without voting rights, remove from office any director in case of fraudulent or dishonest acts or gross abuse of authority or discretion with reference to the corporation, and may bar from reelection any director so removed for a period prescribed by the court. The corporation shall be made a party to such actions.''

When an ultra vires, fraudulent, or illegal transaction has been consummated and a wrong has been done to the corporation, then the shareholder's right to sue the directors or wrongdoers for redress is derivative, and not primary,

since any recovery must go to the corporation for the benefit of all stockholders. ██ Two elements must exist to provide a basis for a representative suit on behalf of a corporation; (1) the gravamen of the complaint, which is injury to the corporation or to the whole body of its stockholders, (as distinguished from alleged wrongs affecting only certain of the individual stockholders) such as the dissipation or threatened dissipation of its assets, and (2) the derivative aspect of the cause of action which arises from the fact that the responsible officials fail or refuse to act. Both elements are essential. (*Toboni* v. *Pennington Millinery Co.*, 172 Cal. App.2d 47, 50-51 [341 P.2d 845]; *Klopstock* v. *Superior Court*, 17 Cal.2d 13, 16-17 [108 P.2d 906, 135 A.L.R. 318].)

*Findley* v. *Garrett*, 109 Cal.App.2d 166 [240 P.2d 421], was a stockholders' derivative action to require defendants to account to the corporation for certain profits alleged to have been wrongfully acquired and to impress a trust on stock in another corporation. The trial court entered judgment in favor of the defendant directors after sustaining their demurrer to the first amended complaint without leave to amend.

In affirming the judgment, the appellate court observed that the charges of fraud and conspiracy made against the corporate directors were made upon information and belief and in very general terms. ██ The court emphasized the well-established rule *that in a case of this kind, general charges of fraud, conspiracy and bad faith on the part of corporate directors are insufficient in the absence of allegations of specific facts adequate to show the basis for the general charges.* The court further stated at pages 174 and 175:

" ' [C]onduct of directors in the management of the affairs of a corporation is not subject to attack by minority stockholders . . . where such acts are discretionary and are performed in good faith, reasonably believing them to be for the best interest of the corporation.' . . . 'Every presumption is in favor of the good faith of the directors. Interference with such discretion is not warranted in doubtful cases.' . . . '[T]he refusal by the corporate management must appear affirmatively to be a disregard of duty and not an error of judgment; a nonperformance of a manifest official obligation amounting to a breach of trust.' "

In *Remillard Brick Co.* v. *Remillard-Dandini*, 109 Cal. App.2d 405 [241 P.2d 66], the plaintiff sought the removal of two directors, to invalidate certain contracts, and to recover for the corporation the profits derived from the contracts by

two other companies which were controlled by said two directors. The appellate court held that the contracts should be declared invalid and that the profits therefrom should be restored to the corporation, but that the trial court acted correctly in refusing to remove the two directors. At pages 423 and 424 the court declared:

■ "Section 811 of the Corporations Code provides that the court 'may' remove a director 'in case of fraudulent or dishonest acts or gross abuse of authority or discretion' and 'may bar from reelection any director so removed for a period prescribed by the court.' The section, by its very terms, indicates that the power is discretionary. The cases, both before and after the adoption of section 811, so hold. . . . Moreover, it should be pointed out that the acts here committed occurred during the years 1948 and 1949. These two men were reelected by the stockholders for the year 1950. ■ It is a general rule that a director will not be removed for acts committed during his term of office if he is subsequently reelected. (*Atkins* v. *Hughes*, 208 Cal. 508 [282 P. 787].)"

### The Complaint States No Cause of Action

In view of the provisions of section 811 of the Corporations Code providing the remedy which plaintiffs here seek to invoke, and in view of the decisions we have cited and quoted above which state both the essential elements of the type of action here involved and the rules of pleading applicable thereto, it seems entirely clear that the trial court ruled correctly in sustaining the demurrers of all defendants to the fifth amended and supplemental complaint.

The only *present* directors named as defendants and whose removal is sought by the complaint under review are three of a total of seven, namely, Smith, McHaffie and Edeson. The names of the other four are undisclosed. Plaintiffs allege that the three named directors and the defendant Chandler were elected at the annual stockholders' meeting held on March 19, 1960. It is alleged that following the subsequent resignation of Chandler, said three directors "caused to be appointed" John Taft and George Fitzhugh, and that they "are served herein as John Doe I and John Doe II." However, there is no allegation that either Taft or Fitzhugh is presently serving as a member of the board of directors.

As to the three present directors named as defendants, it is to be remembered that all the basic charges of wrongdoing of which plaintiffs complain are alleged to have been perpetrated between 1953 and the commencement of this action on

November 19, 1959. These defendants were not elected directors until March 1960. Moreover, there is no allegation of any facts showing, or tending to show, that these minority members of the board dominate or control the majority. We have noted that no facts are alleged to indicate in what manner the defendant Smith "prevailed" upon the board of directors to expel some of the plaintiffs from the club membership "without cause or justification."

Section 811 of the Corporations Code provides for the removal of a director "in case of fraudulent or dishonest acts or gross abuse of authority or discretion *with reference to the corporation*, . . ." (Emphasis added.) The instant complaint does not state a cause of action against the three present directors, since it does not plead any acts or conduct on their part which could be said to constitute fraudulent or dishonest acts or gross abuse of authority or discretion with reference to the corporation.

As recently stated in *Fairchild* v. *Bank of America*, 192 Cal.App.2d 252 [13 Cal.Rptr. 491] at page 257: "To warrant interference by a court in favor of minority stockholders . . . a case must be made out which plainly shows that such action is so far opposed to the true interest of the corporation itself as to lead to the clear inference that no one thus acting could have been influenced by any honest desire to secure such interest, but that he must have acted with an intent to subserve some outside purpose, regardless of the consequences to the company. [Citations.]"

 We have observed that all the essential charges of fraud, the allegation that the annual meeting of the stockholders held on March 19, 1960, was "controlled and directed" by the defendant Smith, and the allegations that the present directors are dominated and controlled by others, are stated in the form of the most general conclusions.

The insufficiency of such allegations has long been recognized. (23 Cal.Jur.2d, Fraud and Deceit, § 64, p. 156 et seq., and cases cited; *Fallbrook, etc. Utility Dist.* v. *Martin*, 151 Cal.App.2d 84, 94 [311 P.2d 151]; *Scafidi* v. *Western Loan & Bldg. Co.*, 72 Cal.App.2d 550, 553 [165 P.2d 260]; and *Findley* v. *Garrett*, 109 Cal.App.2d 166, quoted *supra*.)

Reviewing the pleading to determine whether a cause of action has been stated against the 13 defendants whose demurrer was sustained without leave to amend, we find the following references to them. Lane, Coldewey, Chandler and Johnson are alleged to have been directors of the club at the

time the action was filed; Chandler was reelected on March 19, 1960, at a "purported election" but resigned shortly thereafter; Lane, Coldewey, Johnson, Ingham, Tapping, Depue, Campbell, Laming, Waldschmidt, Woods and Dotson are alleged to be past directors. Reid is alleged to be their agent.

It thus appears that, of these 13 defendants, four (Lane, Coldewey, Johnson, and Chandler) were directors of the club when the original complaint was filed on November 19, 1959, and eight (Ingham, Tapping, Depue, Campbell, Laming, Waldschmidt, Woods and Dotson) were directors at some earlier time. One (Reid) was never a director. *None of them was a director at the time the fifth amended and supplemental complaint was filed.* ▮ Manifestly section 811 is designed to provide a remedy for the wrongdoing of presently acting directors.

The allegations of wrongdoing on the part of these defendants are found in general statements referring to *"defendants,"* inasmuch as the pleading does not name them specifically and they are not named as *present* directors. The dates of their respective terms of office are not indicated. The pleading first alleges that the defendants "named as directors" have been guilty of fraudulent and dishonest acts and gross abuse of authority and discretion as more particularly set out thereafter. The subsequent allegations that the books and records were negligently and fraudulently kept then refer to the period from 1953 to the filing of the action in November 1959. Giving plaintiffs the benefit of the most favorable construction of this doubtful pleading, apparently it was intended to state that the alleged acts of wrongdoing and the inaccuracies in the corporate records are chargeable against the *twelve* past directors.

An examination of these very indirect and uncertain allegations indicates that the most that is alleged is that these defendants made certain incorrect entries in the books and failed to make certain other entries. It is thereafter alleged that they knew of the deficient condition of the books; that they knew that a demand to correct them had been made; and that they allowed the matters to persist.

It is alleged by way of conclusion that the present board of directors is under the control of defendants Smith and Reid, and, by way of an uncertain recital, it is indicated that Smith and Reid are acting as agents for the *past* directors. *There is no allegation of any fact to indicate how such control is being*

*exercised.* It is then alleged that the purpose of the 12 past directors is to so manipulate the affairs of the club that plaintiffs will be compelled to sell their stock to defendants or be deprived of their rights as stockholders.

In respect to Reid, it is merely alleged that he controls the board of directors, is the agent of the past directors, and has "prevailed" on the board to expel some of the plaintiffs from the club. Again there is no allegation of any *facts* to show by what means or in what manner Reid has "prevailed" on the board of directors to take any action. It is sought by the action to enjoin these past directors (and apparently Reid, although it is not alleged that he was ever a director, officer or committee member) from holding office in the future for a period to be set by the court.

In summary, of the 13 defendants whose general demurrer was sustained without leave to amend, one was never a director, eight were directors for some unspecified period prior to the filing of the original complaint, three were directors at the time of the filing of the original complaint, but ceased to be directors as of March 19, 1960, prior to the filing of the third amended complaint, one was a director at the time of the filing of the original complaint, was reelected on March 19, 1960, but resigned prior to the filing of the fourth amended complaint. None of these 13 defendants was a director at the time of the filing of the complaint under consideration. Hence, section 811 of the Corporations Code, under which this complaint was specifically brought, cannot apply to these defendants.

Assuming that the current liabilities of the corporation are in excess of $50,000, that the corporation is, in fact, operating at a loss instead of a small profit, that some obligations are not reflected on the books, and that the stock record does not show all of the outstanding shares, such a situation does not spell out a case of fraud or dishonesty. As to abuse of authority or discretion, there is no allegation of any act done by any named defendant which caused the alleged errors. Moreover, the inaccurate record keeping is alleged to have taken place between 1953 and November 19, 1959, prior to the election of the present directors. There is no allegation as to who were the directors during the period when the bookkeeping errors were made.

The allegations that there is a "great probability" that there is more stock issued and outstanding than the mentioned 1,348 shares and that defendants know the whereabouts

thereof, but conceal it in order to protect their majority control at stockholders' meetings, seems wholly lacking in substance in the light of the allegation that this "great probability" appears from "legends" in the available corporate records.

Apparently plaintiffs do not intend to allege that the concealed stock was issued to the defendants, because the concealing thereof would diminish rather than increase their degree of control. It appears that defendants in the aggregate hold less than 25 per cent of the corporation's outstanding stock. The right to have shares entered on the corporate register belongs to the holders of those shares. There is no allegation that any shares were issued unlawfully or without authority. There is no allegation that any defendant retained any of the consideration presumably paid for such shares.

*The Complaint Fails to Allege a Demand as Required*

Section 834, subdivision (a) of the Corporations Code provides that no shareholders' action may be maintained unless: "(2) The plaintiff alleges in the complaint with particularity his efforts to secure from the board of directors such action as he desires and alleges further that he has either informed the corporation or such board of directors in writing of the ultimate facts of each cause of action against each defendant director or delivered to the corporation or such board of directors a true copy of the complaint which he proposes to file, and the reasons for his failure to obtain such action or the reasons for not making such effort."

On March 19, 1960, an election of a new board of directors was held, and only one out of the seven directors was reelected. He resigned on June 14, 1960, prior to the filing of the fourth amended complaint. The primary purpose of the instant complaint is to effect the removal of three of the newly elected directors. There is no allegation of any demand on the new board or on these three directors. It is merely alleged: "On or about the 19th day of March, 1960, when defendants KENNETH D. SMITH, GILMAN R. MCHAFFIE, ARTHUR EDESON and EDWARD CHANDLER were elected to the board of directors they knew that demands had been made upon both themselves and their predecessors in office by plaintiffs to ascertain the true financial condition of the defendant corporation; and to obtain from their predecessors in office the true and correct books and records of said corporation, and to correct said books and records to show the true condition, financially, stockwise, taxwise and business wise of said corporation.

However, and despite the requests and demands of the plaintiffs, said last mentioned directors, and each of them, in hostile attitude, failed, refused and neglected so to do; but on the contrary condoned the malfeasance of their predecessors in office by approving their actions as hereinafter alleged.''

The foregoing allegations, in effect, state that the three named directors knew that demands had been made, but the complaint fails to allege that such demands were made in writing as required by the statute, the dates or contents of such demands, or upon whom they were made. It is self-evident that the language of the pleading falls far short of meeting the clear and express requirements of section 834, subdivision (a).

*The Complaint States No Cause of Action for the Appointment of a Receiver*

It is clear that the cause of action which plaintiffs have attempted to state is designed primarily to accomplish the removal of three directors by invoking the remedy provided by section 811 of the Corporations Code. There is no separate cause of action for the appointment of a receiver, but such appointment is incidental to the main objects of the complaint. (*Frick* v. *Calmin Mortgage Corp., Ltd.,* 220 Cal. 746, 747-748 [32 P.2d 619]; *Murray* v. *Superior Court,* 129 Cal. 628, 632 [62 P. 191].) It has been held consistently that in the absence of a clear showing of an abuse of discretion the trial court's order either appointing or refusing to appoint a receiver will be upheld. (*Goes* v. *Perry,* 18 Cal.2d 373, 381 [115 P.2d 441]; *Sibert* v. *Shaver,* 113 Cal.App.2d 19, 21 [247 P.2d 609]; *Venza* v. *Venza,* 94 Cal.App.2d 878, 883 [211 P.2d 913].) The power to appoint a receiver for a going corporation should be exercised sparingly. It is a drastic remedy and one which should not be invoked unless there is a threatened injury to a corporation of a serious nature. (*In re Jamison Steel Corp.,* 158 Cal.App.2d 27, 35 [322 P.2d 246]; *Rogers* v. *Smith,* 76 Cal.App.2d 16, 21 [172 P.2d 365]; *Alhambra-etc. Mines, Inc.* v. *Alhambra G. Mine Corp.,* 116 Cal.App.2d 869, 873 [254 P.2d 599]; *Mason* v. *San-Val Oil & Water Co., Ltd.,* 1 Cal.2d 670, 673 [36 P.2d 616]; *Sunset Farms, Inc.* v. *Superior Court,* 9 Cal.App.2d 389, 400-401 [50 P.2d 106].)

A further fatal deficiency in the pleading is its lack of factual allegation of any injury. It is stated by way of conclusion that great and irreparable damage has been done

and will be done unless a receiver is appointed, but no fact is alleged to show how either plaintiffs or the corporation have been, or will be, injured. It is alleged that it is the intent of defendants, acting in concert, to force plaintiffs to sell their shares or be deprived of them, but there is no allegation that any defendant has taken, or threatens to take, any specific action reasonably calculated to accomplish that purpose. It is suggested that assets of the corporation will be dissipated unless a receiver is appointed. But nowhere is any actual injury alleged and nowhere is it shown how or in what manner any injury will result to the corporation because of any threatened act or omission alleged on the part of these defendants.

### Conclusion

The judgment in favor of the three defendants whose demurrer was sustained with leave to amend was, of course, properly entered, because, although the complaint failed to state a cause of action, plaintiffs chose not to file an amended pleading within the time allowed by the court. (*Craig* v. *City of Los Angeles*, 44 Cal.App.2d 71, 74 [111 P.2d 977] ; *Levy* v. *Cytron*, 84 Cal.App.2d 827, 829 [191 P.2d 816].)

As to the 13 defendants whose demurrer was sustained without leave to amend, the ruling of the trial court was a proper exercise of discretion, because the record clearly supports the implied conclusion that the complaint under review could not be so amended as to obviate the objections thereto and the deficiencies therein. (*Barrier* v. *Alexander*, 100 Cal.App.2d 497, 501-502 [224 P.2d 436] ; *Karpe* v. *Great American Indem. Co.*, 190 Cal.App.2d 226, 233 [11 Cal.Rptr. 908].) Appellants filed a series of six complaints. Three different trial judges passed upon one or more of the several demurrers to these complaints; all of said demurrers were sustained.

As recently stated in *Schultz* v. *Steinberg*, 182 Cal. App.2d 134, 140 [5 Cal.Rptr. 890] : ''While abuse of discretion in sustaining a demurrer without leave to amend is reviewable on appeal even in the absence of a request for leave to amend [citations] nevertheless, the burden of showing such abuse rests upon the appellant and a reviewing court should reverse only where there is manifest an abuse of discretion in refusing leave to amend. [Citations.] Abuse of discretion is not shown where it is not indicated as to the manner in which it is proposed to amend nor the nature of the proposed amendment. [Citations.] Neither

before the trial court nor before this court has plaintiff indicated the nature of a proposed amendment or the manner in which he would amend his complaint. Plaintiff has therefore failed to establish reversible error in the dismissal of the action as to defendant Salomon.'' (See also *Broadway Fed. etc. Loan Assn.* v. *Howard,* 133 Cal.App.2d 382, 401 [285 P.2d 61].) We find no abuse of discretion in denying leave to amend in this instance.

The judgment entered on December 9, 1960, and the order of dismissal dated and entered December 14, 1960, are affirmed; the attempted appeal from the order sustaining the demurrer of certain defendants is dismissed.

Fox, P. J., and Ashburn, J., concurred.

A petition for a rehearing was denied May 29, 1962, and appellants' petition for a hearing by the Supreme Court was denied June 27, 1962.