[L.A. No. 30465. Nov. 29, 1976.]

MELVILLE GOODMAN et al., Plaintiffs and Appellants, v.
J. JOSEPH KENNEDY et al., Defendants and Respondents.

## COUNSEL

Hecht & Diamond and Roger Jon Diamond for Plaintiffs and Appellants.

Cary A. Rosen and Rosen, Ross, Fields & Zax for Defendants and Respondents.

## OPINION

**WRIGHT, C. J.**—Plaintiffs seek damages from defendant Kennedy, an attorney, for losses they incurred on certain shares of stock purchased from Kennedy's clients, who were principal officers of the corporation issuing the stock. Plaintiffs allege that defendant[1] negligently advised his clients that the shares in question could be issued to them as stock dividends and sold to third persons without jeopardizing the exemption from the requirement of registering the corporation's stock under the Securities Act of 1933 (the Act) theretofore granted under Regulation A of the Securities and Exchange Commission (SEC). (See 15 U.S.C. § 77c(b); 17 C.F.R. §§ 230.251-230.263.) Plaintiffs also allege that defendant had a telephone conversation concerning the proposed stock purchase with an attorney representing two of the three plaintiffs in which defendant failed to advise that attorney of certain facts allegedly material to the necessity for the SEC exemption and the effect the proposed purchase might have on its continued existence. Defendant allegedly withheld this information for the purpose of deceiving plaintiffs and plaintiffs allegedly relied on the nondisclosure in purchasing the stock. The alleged result of the purchase was an order by the SEC suspending the exemption with consequent loss in the stock's value, to plaintiffs' damage.

A general demurrer to plaintiffs' third amended complaint alleging these facts was sustained without leave to amend and plaintiffs appeal from the ensuing dismissal. Their appeal presents the legal question of whether or under what circumstances an attorney's duty of care in giving legal advice to a client extends to persons with whom the client in acting upon the advice deals wholly at arm's length. Applying criteria announced in our prior decisions, we conclude for reasons to be explained that the present defendant had no such duty in the absence of any showing that the legal advice was foreseeably transmitted to or relied upon by plaintiffs or that plaintiffs were intended beneficiaries of a transaction to which the advice pertained. Nor under the alleged circumstances did defendant have any duty toward plaintiffs during his alleged conversation with their attorney to bring up the subject matter of his prior advice to his clients. No facts are alleged that would give rise to any such duty such as defendant's making any statement that would be misleading without the disclosure.

---

[1]"Defendant" hereinafter refers to defendant Kennedy. The law firm of which Kennedy was a partner was also joined as a defendant solely on the theory that he was acting as the firm's agent.

Plaintiffs also assert causes of action for fraud and for violation of provisions of the Corporate Securities Law of 1968 (Corp. Code, § 25400, subd. (d), § 25401) based on the same alleged nondisclosures. These causes of action likewise fail for lack of any factual allegations giving rise to a duty to disclose.

## Negligence

The negligence claims of plaintiffs Stanley D.. Davidson, Marvyn Davidson and Melville Goodman are separately stated in the first, fourth and seventh causes of action respectively of the third amended complaint. They allege: Defendant was a director and officer of Motel Managers Training School, Inc. (the corporation). At all relevant times the exemption from registration provided by the SEC's Regulation A was limited to stock issues having an aggregate offering price of not more than $300,000. (See 15 U.S.C. § 77c(b) (prior to 1970 amendments); 17 C.F.R. § 230.254 (prior to 1972 amendment).) During the fall of 1968 defendant negligently advised Soma and Spencer, the corporation's principal officers, that they "could cause the [corporation] to issue to each of them additional shares in the form of stock dividends, and that they could sell those additional shares to third persons with the result that the proceeds received from the sale of those shares would not be computed in the aggregate offering price under Regulation A."

The actual issuance of shares pursuant to this advice is not directly alleged but can be inferred from other allegations. It is alleged that "with respect to the additional shares issued to . . . Soma and . . . Spencer, no escrow arrangement was made as required by Rule 253(c)," which provides that securities issued to the corporation's officers and not placed under such escrow arrangement must be included in the computation of the amount of the Regulation A offering. (See 17 C.F.R. § 230.253, subd. (c)(2).) Also alleged only by implication are the facts that the shares were issued to Soma and Spencer as stock dividends and that there had in fact been a Regulation A offering. These facts are inferable from the pleading of the previously mentioned telephone conversation as follows: "One Sunday morning in December 1968, defendant Kennedy was contacted by Attorney Thomas Pitcher of the law firm of Gibson, Dunn & Crutcher, acting on behalf of plaintiffs Marvyn Davidson and Stanley D. Davidson, to discuss the proposed sale of [the] stock from Soma and Spencer to Marvyn Davidson and Stanley D. Davidson." There is no further allegation of what *was* said during this conversation but it is

alleged that defendant did *not* state to Pitcher (1) "that the [corporation] had begun a Regulation A offering on September 30, 1968, and completed that offering on October 25, 1968," (2) "that the stock being sold to [the Davidsons] was received from the [corporation] as stock dividends," (3) "reasons why the securities would be exempt from registration as exempt securities or on a transaction exemption," (4) "the possibility that the [SEC] could integrate the new stock with shares previously sold by the [corporation] under Regulation A, with the result that the entire Regulation A exemption might be lost," and (5) "that Soma and Spencer were underwriters under Section 2(11) of the Act."[2] These *omissions* in defendant's statements to Pitcher were allegedly made "for the purpose of deceiving him and his clients and obtaining the result of [each] plaintiff's purchase of stock from Soma and Spencer."

It is alleged that in January 1969, plaintiffs Stanley D. Davidson and Marvyn Davidson each purchased 3,000 shares of the stock for $40,500 and plaintiff Melville Goodman purchased 3,000 shares for $54,000. Plaintiffs allegedly made these purchases and thereafter retained the shares "relying upon representations made by [defendant] to Pitcher, and thereafter conveyed by Pitcher to [each plaintiff] that the transaction was not in violation of the [Act]." However, no express representation of such nonviolation is alleged to have been made by defendant during the telephone conversation and plaintiffs acknowledged in a memorandum to the trial court in opposition to the demurrer that the misrepresentation on which they assertedly relied consisted only of defendant's silence in the face of what they claim was a duty to disclose. Indeed the previously mentioned allegation that defendant omitted any statement to Pitcher of "reasons why the securities would be exempt from registration" further negates any claim that defendant affirmatively represented the legality of the transaction.

As to damages, it is alleged: The SEC temporarily suspended the Regulation A exemption on September 29, 1969, and permanently suspended it on April 17, 1970, "for exceeding the ceiling allowed under the terms and conditions of Regulation A." "[T]he sale to plaintiff[s] . . . violated the Regulation A exemption for which an injunction [suspension] issued." The suspension caused the value of the stock to depreciate to plaintiffs' damage. The stock has become valueless and the sellers are insolvent and cannot respond to a judgment for damages or restitution.

---

[2] It is made clear by another paragraph of the complaint that the sellers' status as underwriters was material not to the Regulation A exemption but to the elimination of any possibility of a different exemption provided by section 4, subdivision (1) of the Act (15 U.S.C. § 77d(1)).

Plaintiffs' causes of action for negligence thus rest on defendant's asserted liability for his (1) negligent advice to his own clients that the stock could be sold without vitiating the exemption from registration under Regulation A and (2) conscious nondisclosure of matters which would have indicated the possibility of such adverse consequence to the attorney for two of the plaintiffs in a conversation initiated by that attorney to discuss the proposed sale of some of the stock to those plaintiffs.[3] Plaintiffs assert that if defendant should have reasonably foreseen that this negligent advice or conscious nondisclosure would economically damage plaintiffs he should be liable for such damage. However, there can be no such liability unless defendant owed a *duty* to plaintiffs to avoid the asserted wrongdoings.  Whether such a duty existed is a question of law and depends on a judicial weighing of the policy considerations for and against the imposition of liability under the circumstances. (*Weirum* v. *RKO General, Inc.* (1975) 15 Cal.3d 40, 46 [123 Cal.Rptr. 468, 539 P.2d 36]; *Amaya* v. *Home Ice, Fuel & Supply Co.* (1963) 59 Cal.2d 295, 307 [29 Cal.Rptr. 33, 379 P.2d 513]; see *Dillon* v. *Legg* (1968) 68 Cal.2d 728, 734-735 [69 Cal.Rptr. 72, 441 P.2d 912, 29 A.L.R.3d 1316].)

We consider first whether defendant owed any duty of care to plaintiffs in advising his own clients concerning the legal consequences of a possible sale of the stock. Plaintiffs rely for the existence of such a duty upon our decisions holding that an attorney may be liable to the intended beneficiaries of a deceased testator for the amount the intended beneficiary would have received from the testator's estate if the attorney had exercised due care in drafting the will in accordance with the testator's expressed wishes. (*Heyer* v. *Flaig* (1969) 70 Cal.2d 223 [74 Cal.Rptr. 225, 449 P.2d 161]; *Lucas* v. *Hamm* (1961) 56 Cal.2d 583 [15 Cal.Rptr. 821, 364 P.2d 685].) The forerunner of these decisions was *Biakanja* v. *Irving* (1958) 49 Cal.2d 647 [320 P.2d 16, 65 A.L.R.2d 1358], in which we held a notary public liable to the beneficiary of a will which was ineffective because of the notary's negligent supervision of its attestation. *Biakanja* overruled *Buckley* v. *Gray* (1895) 110 Cal. 339 [42 P. 900], which had held that lack of privity of contract precluded an attorney's liability to an intended beneficiary for negligence in drafting a will and directing its execution. Rejecting the requirement of privity, we said in *Biakanja*: "The determination whether in a specific case the

---

[3]The nondisclosure was conscious in that disclosure was allegedly omitted for the purpose of deceiving the attorney and plaintiffs, but there are no allegations in the negligence causes of action purporting to set forth the other elements of a cause of action for fraud.

defendant will be held liable to a third person not in privity is a matter of policy and involves the balancing of various factors, among which are the extent to which the transaction was intended to affect the plaintiff, the foreseeability of harm to him, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, and the policy of preventing future harm." (49 Cal.2d at p. 650.)

In *Lucas* v. *Hamm, supra,* 56 Cal.2d 583, we applied these factors in holding that the defendant attorney's duty of care in drafting a will extended to the intended beneficiary. We said: "As in *Biakanja,* one of the main purposes which the transaction between defendant and the testator intended to accomplish was to provide for the transfer of property to plaintiffs; the damage to plaintiffs in the event of invalidity of the bequest was clearly foreseeable; it became certain, upon the death of the testator without change of the will, that plaintiffs would have received the intended benefits but for the asserted negligence of defendant; and if persons such as plaintiffs are not permitted to recover for the loss resulting from negligence of the draftsman, no one would be able to do so and the policy of preventing future harm would be impaired." (56 Cal.2d at p. 589.) We subsequently pointed out in *Heyer* v. *Flaig, supra,* 70 Cal.2d 223, that "[w]hen an attorney undertakes to fulfill the testamentary instructions of his client, he realistically and in fact assumes a relationship not only with the client but also with the client's intended beneficiaries" (70 Cal.2d at p. 228) and that it is this relationship which gives rise to a duty of care owed by the attorney to such beneficiary (70 Cal.2d at p. 229).

The present defendant had no relationship to plaintiffs that would give rise to his owing plaintiffs any duty of care in advising his clients that they could sell the stock without adverse consequences. There is no allegation that the advice was ever communicated to plaintiffs and hence no basis for any claim that they relied upon it in purchasing or retaining the stock.[4] Nor was the advice given for the purpose of enabling defendant's clients to discharge any obligation to plaintiffs. Thus, there is

[4] We are therefore not concerned with such cases as *Roberts* v. *Ball, Hunt, Hart, Brown & Baerwitz* (1976) 57 Cal.App.3d 104, 110-111 [128 Cal.Rptr. 901], in which an attorney gives his client a written opinion with the intention that it be transmitted to and relied upon by the plaintiff in dealing with the client. In that situation the attorney owes the plaintiff a duty of care in providing the advice because the plaintiff's anticipated reliance upon it is "the end and aim of the transaction" (*Glanzer* v. *Shepard* (1922) 233 N.Y. 236, 238-239 [135 N.E. 275, 23 A.L.R. 1425]).

no allegation that plaintiffs had any relationship to defendant's clients or to the corporation as stockholders or otherwise when the advice was given.

Plaintiffs contend, however, that because the advice related to a possible sale of stock by defendant's clients, defendant's duty of care in giving the advice extended to anyone to whom the sale might be made. Invoking the policy considerations upon which liability to putative will beneficiaries was recognized in *Biakanja, Lucas* and *Heyer, supra,* plaintiffs argue that defendant's advice was "intended to affect" them as purchasers and that harm to them was foreseeable from the adverse effect of the sale upon the value of the stock contrary to the erroneous assurances embodied in the negligent advice. However, plaintiffs were not persons upon whom defendant's clients had any wish or obligation to confer a benefit in the transaction. Plaintiffs' only relationship to the proposed transaction was that of parties with whom defendant's clients might negotiate a bargain at arm's length. Any buyers' "potential advantage" from the possible purchase of the stock "was only a collateral consideration of the transaction" (*Biakanja* v. *Irving, supra,* 49 Cal.2d at p. 650) and did not put such potential buyers into any relationship with defendant as "intended beneficiaries" of his clients' anticipated sales (*Heyer* v. *Flaig, supra,* 70 Cal.2d at p. 228).

■ To make an attorney liable for negligent confidential advice not only to the client who enters into a transaction in reliance upon the advice but also to the other parties to the transaction with whom the client deals at arm's length would inject undesirable self-protective reservations into the attorney's counselling role. The attorney's preoccupation or concern with the possibility of claims based on mere negligence (as distinct from fraud or malice) by any with whom his client might deal "would prevent him from devoting his entire energies to his client's interests" (*Anderson* v. *Eaton* (1930) 211 Cal. 113, 116 [293 P. 788]). The result would be both "an undue burden on the profession" (*Lucas* v. *Hamm, supra,* 56 Cal.2d 583, 589) and a diminution in the quality of the legal services received by the client.[5] (See *Daly* v. *Smith* (1963) 220 Cal.App.2d 592, 604 [33 Cal.Rptr. 920].)

---

[5]In *Norton* v. *Hines* (1975) 49 Cal.App.3d 917 [123 Cal.Rptr. 237], a party who had successfully defended a civil suit filed a complaint against his opponent's attorney claiming damages for the attorney's negligence in advising prosecution of the suit but failing to allege the elements of an action for malicious prosecution. In holding that no cause of action was stated the court properly expressed concern that if an attorney is made liable to his client's adversary for mere negligence in advising commencement of a suit, "lawsuits now justifiably commenced will be refused by attorneys, and the client, in

■ Plaintiffs contend that even if defendant had no duty of care toward them when he initially advised his clients, Soma and Spencer, concerning the propriety of a sale of the stock, such a duty on his part toward plaintiffs Stanley D. Davidson and Marvyn Davidson arose when he learned through the inquiry of their attorney, Pitcher, that they were prospective purchasers from Soma and Spencer. Knowledge of the Davidsons' identity, however, had no bearing on the propriety of the confidential advice which defendant originally imparted to his clients and therefore did not affect the scope of defendant's duty of care with respect to that advice. Nor did the alleged circumstances of the telephone call from Pitcher give rise to any duty of care that would require defendant to disclose the matters he allegedly omitted to state. There is no allegation that defendant made any affirmative misrepresentation to Pitcher or made any statements that were misleading because of alleged nondisclosures or that defendant was dealing with Pitcher other than at arm's length. In the absence of any claim of fraud, the allegation that the purpose of defendant's nondisclosure was to deceive Pitcher and to induce the sale establishes no more than that defendant determined to leave to his clients the decision of what information to volunteer in the course of the sale negotiations.

### Claimed Violations of Corporate Securities Law

■ Separate causes of action are alleged for each plaintiff based on sections 25400 and 25401 of the Corporate Securities Law of 1968 (Corp. Code, §§ 25400, 25401). Insofar as material here these provisions have the following effect: Section 25400, subdivision (d), makes it unlawful for the purpose of inducing the purchase of stock to make any statement which (1) is false or misleading with respect to any material fact or (2) omits material facts necessary to make the statement not misleading. Section 25401 makes it unlawful to sell a security by means of a communication that includes such a statement. A party injured by violations of the provisions may recover damages. (Corp. Code, §§ 25500, 25501.)

These provisions became effective on January 2, 1969, and do not apply to legal proceedings "on the basis of facts or circumstances occurring before [this] effective date." (Corp. Code, § 25704, subd. (a).) Accordingly, section 25400, subdivision (d), is inapplicable to the present case as there is no allegation that defendant made any statement with

most cases, will be denied his day in court." (49 Cal.App.3d at p. 923.) (See also *DeLuca v. Whatley* (1974) 42 Cal.App.3d 574 [117 Cal.Rptr. 63].)

respect to the stock subsequent to his alleged telephone conversation with Pitcher in December 1968.

It is arguable that section 25401 applies to a sale made after its effective date even though the false or misleading communication instrumental to the sale was made earlier. The alleged time of sale is "January 1969." We need not decide whether section 25401 could apply to sales made by means of a misleading communication transmitted prior to the section's effective date as no such communication is alleged. There is no allegation of any statement by defendant to plaintiffs or their representative other than that defendant engaged in a telephone conversation with Pitcher "to discuss the proposed sale of [the] stock." Thus, defendant is not alleged to have made either any untrue statement of a material fact or any statement that was rendered misleading by the omission of a material fact.[6]

*Fraud*

The third amended complaint's purported causes of action for fraud, separately alleged for each plaintiff, simply incorporate all of the allegations of the negligence counts, add that the omissions in defendant's statements during his conversation with plaintiffs' attorney, Pitcher, "were done intentionally and for the purpose of defrauding plaintiff[s]," and claim punitive damages. If defendant committed actual fraud in his dealings with Pitcher, the fact that he did so in the capacity of attorney does not relieve him of liability. (*Greenwood* v. *Mooradian* (1955) 137 Cal.App.2d 532, 539 [290 P.2d 955]; see *Warner* v. *Roadshow Attractions Co.* (1942) 56 Cal.App.2d 1, 7 [132 P.2d 35].) ▆ The limitations upon liability for negligence based upon the scope of an attorney's duty of care do not apply to liability for fraud. (*Buckley* v. *Gray, supra,* 110 Cal. 339, 342; cf. *Ultramares Corp.* v. *Touche* (1931) 255 N.Y. 170, 189 [174 N.E. 441, 74 A.L.R. 1139].)

▆ Being grounded solely on omissions, the validity of the present fraud counts depends on allegations that would establish some duty of disclosure on the part of defendant. No such duty is shown. There is no allegation of a confidential relationship (see *Hobart* v. *Hobart Estate Co.*

---

[6]The full text of section 25401 of the Corporations Code is as follows: "It is unlawful for any person to offer or sell a security in this state or buy or offer to buy a security in this state by means of any written or oral communication which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading."

(1945) 26 Cal.2d 412, 433 [159 P.2d 958]; *Black* v. *Shearson, Hammill & Co.* (1968) 266 Cal.App.2d 362, 367 [72 Cal.Rptr. 157]) or of any representation by defendant that was likely to mislead for want of the disclosures (see Civ. Code, § 1710, subd. 3; *Rogers* v. *Warden* (1942) 20 Cal.2d 286, 289 [125 P.2d 7]) or of any active concealment of the undisclosed matters (see *Herzog* v. *Capital Co.* (1945) 27 Cal.2d 349, 353 [164 P.2d 8]; *Williams* v. *Graham* (1948) 83 Cal.App.2d 649, 652 [189 P.2d 324]).

The only other basis for a duty of disclosure is one which may exist when one party to a transaction has sole knowledge or access to material facts and knows that such facts are not known to or reasonably discoverable by the other party. (See *Warner Constr. Corp.* v. *City of Los Angeles* (1970) 2 Cal.3d 285, 294 [85 Cal.Rptr. 444, 466 P.2d 996]; *Lingsch* v. *Savage* (1963) 213 Cal.App.2d 729, 735 [29 Cal.Rptr. 201, 8 A.L.R.3d 537].)      The complaint fails to state any claim for fraud on this theory. Insufficient facts are alleged to establish that defendant knew the materiality of the omitted matters or that they were inaccessible to plaintiffs. Nor are there any factual allegations showing that plaintiffs were reasonably induced to purchase the stock by defendant's omission of these matters from his statements in the conversation with Pitcher. The mere conclusionary allegations that the omissions were intentional and for the purpose of defrauding and deceiving plaintiffs and bringing about the purchase of the stock and that plaintiffs relied on the omissions in making such purchase are insufficient for the foregoing purposes. (*Cooper* v. *Leslie Salt Co.* (1969) 70 Cal.2d 627, 636 [75 Cal.Rptr. 766, 451 P.2d 406]; *La Vista Cemetery Assn.* v. *American Sav. & Loan Assn.* (1970) 12 Cal.App.3d 365, 369 [90 Cal.Rptr. 722]; *Norkin* v. *United States Fire Ins. Co.* (1965) 237 Cal.App.2d 435, 437 [47 Cal.Rptr. 15]; *Lesperance* v. *North American Aviation, Inc.* (1963) 217 Cal.App.2d 336, 344 [31 Cal.Rptr. 873].)

The five matters which defendant allegedly failed to disclose to Pitcher were (1) the existence of a prior Regulation A offering, (2) the fact that Soma and Spencer had received the stock to be sold as stock dividends, (3) reasons for exemption of the stock from registration, (4) the possibility that the SEC would treat the stock being sold as included in the Regulation A offering and therefore withdraw the Regulation A exemption, and (5) that Soma and Spencer were "underwriters." Significant to defendant's state of mind on these matters is the allegation retained in the fraud counts that prior to the conversation with Pitcher defendant *negligently* advised Soma and Spencer they could receive the

stock as stock dividends and sell it without jeopardizing the Regulation A exemption. That defendant gave this advice, albeit negligently, implies that he did not know it was false or erroneous, there being no factual allegations to the contrary. His implied belief that the advice was correct in turn indicates a lack of knowledge of the materiality to the transaction being discussed with Pitcher of the first and second omitted matters (existence of the Regulation A offering and issuance of stock dividends) and of the existence of the fourth omitted matter (possibility of losing the Regulation A exemption). The third omission (reasons for exemption from registration) and fifth omission (that Soma and Spencer were underwriters) would also have been immaterial if defendant's negligent advice had been correct.[7]

Not only do the fraud counts fail to allege defendant's knowledge of the existence and materiality of the omitted matters, they also fail to allege facts establishing defendant's knowledge that the omitted matters were not known to or reasonably discoverable by plaintiffs. There are no facts pleaded indicating that defendant had any part in negotiating the sales of the stock other than to answer a Sunday morning telephone inquiry from plaintiffs' attorney concerning one or more unstated phases of the matter. No alleged circumstances negate a reasonable assumption on the part of defendant that plaintiffs had readily apparent and available sources of information about the corporation and its securities including information from direct dealings between plaintiffs and defendant's clients.

There is also an utter failure to allege any facts indicating that plaintiffs' claimed reliance upon the omissions inducing their purchase of the stock was justifiable or reasonable. (See *Lingsch* v. *Savage, supra*, 213 Cal.App.2d 729, 739.) The mere circumstance of Pitcher's telephonic inquiry did not necessarily place defendant in a position of negotiator for Soma and Spencer as sellers such as would make it reasonable for Pitcher or plaintiffs to expect full disclosure by defendant of all material facts.

---

[7]The complaint alleges that the private offering exemption under section 4, subdivision (2), of the Act (15 U.S.C. § 77d(2)) was not available "[b]ecause the shares of stock sold to plaintiffs were not separate and distinct from the public offering under Regulation A, in that those shares were part of a single plan of financing." This implies that the private offering exemption *would* have been available if defendant had been correct in advising that Soma's and Spencer's stock dividends would be treated as separate from the Regulation A offering. Under such circumstances neither the third omission (reasons for exemption from registration) nor the fifth omission (Soma's and Spencer's status as underwriters for purposes of a still different exemption (see fn. 2, *ante*)) would be material.

■ Finally we consider whether plaintiffs should be given an opportunity to amend their pleadings to allege, if they can, facts sufficient to cure the defects in their attempts to state causes of action for fraud. (See Code Civ. Proc., § 472c.) We conclude that the trial court did not abuse its discretion in sustaining the demurrer to the third amended complaint without leave to amend. ■ "Generally it is an abuse of discretion to sustain a demurrer without leave to amend if there is any reasonable possibility that the defect can be cured by amendment.' (*Temescal Water Co.* v. *Department of Public Works* (1955) 44 Cal.2d 90, 107 [280 P.2d 1].) . . . However, the burden is on the plaintiff to demonstrate that the trial court abused its discretion. (*Filice* v. *Boccardo* (1962) 210 Cal.App.2d 843, 847 [26 Cal.Rptr. 789]; *Starbird* v. *Lane* (1962) 203 Cal.App.2d 247, 262 [21 Cal.Rptr. 280]; *Schultz* v. *Steinberg* (1960) 182 Cal.App.2d 134, 140 [5 Cal.Rptr. 890].) Plaintiff must show in what manner he can amend his complaint and how that amendment will change the legal effect of his pleading. (*Saint* v. *Saint* (1932) 120 Cal.App. 15, 23-24 [7 P.2d 374].)" (*Cooper* v. *Leslie Salt Co., supra,* 70 Cal.2d 627, 636.)

■ After plaintiffs voluntarily amended their original complaint, demurrers were sustained to the first and second amended complaints as well as to the third amended complaint. All three demurrers asserted that the fraud counts of the respective complaints were deficient in that they showed no duty on the part of defendant to disclose the allegedly omitted matters and no justifiable reliance by plaintiffs on the alleged nondisclosures. Plaintiffs' only response to these grounds of demurrer in the trial court insofar as shown by the record was to argue that a duty of disclosure existed under the case law dealing with an attorney's duty of care toward nonclients (e.g., *Lucas* v. *Hamm, supra,* 56 Cal.2d 583, 588-589). As already stated in connection with the negligence counts, plaintiffs were outside the scope of any such duty shown by the pleadings.

On appeal the only suggestion by plaintiffs of a possible relevant amendment to their complaint appears in their final brief where they state: "If this Court will give [plaintiffs] the opportunity to do so and if it believes it to be necessary, [plaintiffs] will allege that which they believe is implicit in their complaint, that they did not know the facts which were not told to them nor were such facts readily accessible." However, they make no offer to allege facts establishing any of the other elements already pointed out as missing from their purported causes of action for fraud. Neither the record nor the tenor of their briefs or oral argument

indicates any ability upon their part to plead and prove facts which would establish the elements we have herein stated to be requisite to establish fraud.

The judgment is affirmed.

McComb, J., Sullivan, J., Clark, J., and Richardson, J., concurred.

**MOSK, J.**—I dissent.

This case comes to us after resolution at the pleading stage. We must, therefore, assume all the allegations of the complaint can be established if plaintiffs are given their day in court. The majority erroneously deny them that opportunity.

Our problem is to decide whether negligent advice by an attorney to his client regarding the effect of a transaction contemplated by the client can be the basis for a cause of action by a third person who, foreseeably, has been damaged in the transaction.

Until relatively recent times, the absence of privity of contract precluded a person other than a client from recovering for the professional negligence of an attorney or an accountant. (See, e.g., *Nat. Savings Bank* v. *Ward* (1880) 100 U.S. 195 [25 L.Ed. 621].) The rationale underlying this rule can be traced to an opinion by Judge Cardozo in *Ultramares Corporation* v. *Touche* (1931) 255 N.Y. 170 [174 N.E. 441, 74 A.L.R. 1139] which involved the liability of a firm of accountants to a creditor who had extended credit to a corporation in reliance on a balance sheet of the corporation prepared by the defendant indicating that the corporation had substantial assets. The defendant knew that the document would be exhibited to potential creditors to establish the financial status of the corporation. Nevertheless, the court refused to hold the defendant liable on a negligence theory to a creditor who had relied upon the audit to his damage. Judge Cardozo, observing that the "assault upon the citadel of privity is proceeding these days apace" reasoned that if liability for negligence to one not in privity exists under these circumstances "a thoughtless slip or blunder . . . may expose accountants to a liability in an indeterminate amount for an indeterminate time to an indeterminate class. The hazards of a business conducted on these terms are so extreme as to enkindle doubt whether a flaw may not exist in the implication of a duty that exposes to these consequences." (174 N.E. at pp. 444-445.)

Since *Ultramares* there has been a steady erosion of the privity requirement in malpractice actions, and California has been in the forefront of jurisdictions extending the scope of professional liability to third persons. In a series of decisions this court has established that, despite the absence of privity, negligence in drafting or attestation of a will may render a defendant liable to the intended beneficiary who failed to receive a share of the estate in accordance with the testator's wishes. In *Biakanja* v. *Irving* (1958) 49 Cal.2d 647 [320 P.2d 16, 65 A.L.R.2d 1358], the intended beneficiary of a will which was denied probate because it was not properly attested was allowed to recover damages from a notary public whose negligence caused the will to fail. Likewise, in *Lucas* v. *Hamm* (1961) 56 Cal.2d 583 [15 Cal.Rptr. 821, 364 P.2d 685], and *Heyer* v. *Flaig* (1969) 70 Cal.2d 223 [74 Cal.Rptr. 225, 449 P.2d 161], it was held that an attorney who negligently drafted a will may be liable to a person who had not received the share of the estate to which he would have been entitled if the will had been drafted in accordance with the testator's intention. In *Heyer* the concept of privity as a bar to the maintenance of an action in these circumstances was abandoned altogether, and it was held that the defendant was liable not because he had breached a contract with the testator but because he breached a duty owed directly to the injured party, i.e., that liability was based on tort rather than on a contractual theory.

These decisions establish that the determination whether a duty was owed to a third party is a question of policy involving the balancing of various factors, including the extent to which the transaction was intended to affect the plaintiff, the degree of certainty that he suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, and the policy of preventing future harm. An additional element to be considered if the defendant is an attorney is whether the recognition of liability would impose an undue burden on the essential functions of the legal profession.[1]

Defendant contends that *Biakanja* and its progeny are distinguishable because in those cases the purpose of the attorney's employment by the testator was to benefit the heirs, whereas here plaintiffs were not the intended beneficiaries of defendant's advice, which was given solely for the benefit of his clients. (See *National Auto. Cas. Ins. Co.* v. *Atkins*

---

[1]On that subject the pithy comment in *Coberly* v. *Superior Court* (1965) 231 Cal.App.2d 685, 689 [42 Cal.Rptr. 64], is relevant: "a lawyer may not gain business as a specialist and defend mistakes as a layman."

(1975) 45 Cal.App.3d 562, 565 [119 Cal.Rptr. 618].) Manifestly a duty to a third party can be more readily found in a situation in which the object of the attorney's employment is the benefit of the third party; there the connection between the attorney's negligence and the injury is evident. But it does not necessarily follow that the absence of direct service to or an intent to benefit the third party precludes liability. Rather, whether a duty is to be implied turns upon a balancing of the factors described in the *Biakanja* line of cases.

I turn, then, to the *Biakanja* factors. Defendant contends that his advice to his client was not intended to affect plaintiffs because at the time the advice was rendered plaintiffs had no connection with the corporation. While it is true that when defendant rendered his advice he was not certain the corporation would issue the additional shares and, of course, could not know the identity of prospective purchasers, there can be no doubt he knew that if his advice was followed those who purchased the stock would be affected thereby. The mere fact that he did not know their identity cannot be decisive. Nor is there any question that it was reasonably foreseeable if the advice was incorrect the purchasers of the stock would be injured.

The complaint leaves something to be desired in specifying the relationship between defendant's negligence and the injury suffered by plaintiffs, but liberally construed, it can be read to allege that the corporation issued the additional shares as the result of defendant's advice,[2] which in turn caused the commission to suspend the Regulation A exemption, resulting in impairment of the value of the stock and the inability of plaintiffs to sell their shares. If we accept the allegations of the complaint as true, as we must, it is clear that plaintiffs suffered injury, for it is alleged that as a result of the actions of the commission they were unable to sell their shares and the value of the stock declined.

Finally, the policy of preventing future harm and making injured parties whole weighs in plaintiffs' favor. In the *Biakanja* line of cases, imposing liability on the defendant was justified because the intended beneficiary had no right of action against the estate, and his sole recourse was against the person who had drafted the will. Here, plaintiffs cannot

---

[2] The complaint does not expressly allege that the corporation issued the additional shares as the result of Kennedy's advice, but such an averment may be implied from the facts alleged. (Code Civ. Proc., § 452.)

recover against the corporation or Soma and Spencer[3] the amount they paid for the securities, and their only recourse is against defendant. Even if the corporation and its officers could recoup through a cause of action for malpractice against defendant, it is doubtful that their damages would include the amount plaintiffs paid for the stock, for the corporation received and used those funds.

In the light of the factors discussed above, I conclude that defendant should be held to owe a duty to plaintiffs. I disagree with the majority's conclusion that the imposition of liability in this case will result in an undue burden upon the legal profession. The contention is not persuasive that the right to recover for malpractice must be limited to the client on a theory that "if we go one step beyond that, there is no reason why we should not go fifty." (*Nat. Savings Bank* v. *Ward, supra,* 100 U.S. at p. 203 [25 L.Ed. at p. 624].) Attorneys are not provided the insulation of mere agents. As the Supreme Court has said many times, they "are officers of the law, as well as the agents by whom they are employed." (*Baker* v. *Humphrey* (1880) 101 U.S. 494, 502 [25 L.Ed. 1065, 1068].)

In this case the class of persons certain to be damaged by the attorney's negligent advice to his client was reasonably foreseeable and the damage was an inexorably direct consequence of the negligent act. Thus, the imposition of a duty toward the third party will not have the result that "assumption of one relation will mean the involuntary assumption of a series of new relations, inescapably hooked together." (*H. R. Moch Co.* v. *Rensselaer Water Co.* (1928) 247 N.Y. 160 [159 N.E. 896, 899].)

No doubt gross extensions of liability, although involving similar conduct and results, can be conjured up: e.g., liability to the creditors of the insolvent corporation or to the children of stockholders deprived of their college tuition by the impoverishment of their parents. However recovery under such fanciful circumstances could be denied for remoteness. Furthermore, the liability of the attorney to third parties should be limited to cases in which, like the matter before us and the *Biakanja* circumstances, the only recourse of the injured party is to pursue the negligent attorney.

---

[3] It is alleged that Soma and Spencer are insolvent. Although the insolvency of the corporation is not directly alleged, a corporation whose stock is without any value is obviously not in a position to respond in damages.

The refusal to impose a duty on the attorney in these circumstances unfairly penalizes innocent persons whose injury was the foreseeable result of the attorney's negligence. In this state we have laid to rest the strictures of the compulsory privity doctrine in malpractice actions by holding that the defendant's liability is based upon tort rather than contract. It would appear to be a rational corollary and a logical consequence of that determination to hold that an attorney who negligently advises his client to enter into a transaction which will inevitably harm another may be liable to the person injured.

The majority is correct as to the causes of action for fraud and violation of the California Corporations Code. However I would reverse the judgment as to the causes of action for negligence.

Tobriner, J., concurred.