*357 JEFFERSON (Bernard), J.—I dissent.
I disagree with the majority’s position that the cross-complaints of the bank and Kindel and Anderson (hereinafter collectively as Kindel) against Gibson, Dunn and Crutcher and Shutan and Trost (hereinafter collectively as Gibson) do not state a viable cause of action for damages for negligence by an attorney.
I shall discuss and designate the parties in this matter in the same way as they are discussed and designated by the majority opinion. Kindel is designated herein as lawyer I and Gibson is designated as lawyer II. There is only one client in this case—Schlumberger—who was represented first by lawyer I, against whom he filed a malpractice action. Subsequently, Schlumberger hired lawyer II for the purpose of becoming extricated from the financial consequences resulting from his claimed malpractice by lawyer I.
The basic holding of the majority, with which I disagree, is that in the malpractice action against lawyer I by Schlumberger, the mutual client of both lawyer I and lawyer II, lawyer I may not cross-complain for partial indemnity against lawyer II, even though the mutual client’s claim for malpractice damages against lawyer I has been enhanced as a result of the malpractice committed by lawyer II. The majority holds that it is bound by the law enunciated in Goodman v. Kennedy (1976) 18 Cal.Sd 335 [134 Cal.Rptr. 375, 556 P.2d 737] and Held v. Arant (1977) 67 Cal.App.3d 748 [134 Cal.Rptr. 422].[1] However, I do not consider these cases as being either dispositive or persuasive with respect to the issue presented.
The Supreme Court case of Goodman is clearly distinguishable from the case at bench—both in its facts and its reasoning. In Goodman, we have a nonlawyer who had dealt with an attorney’s client at arm’s length and who sought to hold the attorney liable for malpractice because of his advice to the client. But, in the case at bench, the person who is seeking to hold an attorney liable in malpractice for his advice to his client is also an attorney who is being sued for malpractice by the mutual client of both attorneys. In the case before us, lawyer I dealt with lawyer II’s client, Schlumberger, not at arm’s length but in a fiduciary relationship just as lawyer II dealt with this same client in a fiduciary relationship.
*358 The case at bench, therefore, • is clearly distinguishable from the Goodman case. As a consequence, the rationale of Goodman has no application to the case at bench, since Goodman makes clear that the rule of law it enunciates seeks to preclude liability of an attorney to a third party who engages in a transaction with the attorney’s client and “with whom the client deals at arm’s length” in such transaction. (Goodman, supra, 18 Cal.3d 335, 344.) (Italics added.)
It is the arm’s-length transaction between client and a third party that causes Goodman to conclude that to permit such a third party to hold the attorney liable for the latter’s negligence to his client “would inject undesirable self-protective reservations into the attorney’s counselling role.” (Ibid.) In such a situation “[t]he attorney’s preoccupation or concern with the possibility of claims based on mere negligence (as distinct from fraud or malice) by any with whom his client might deal ‘would prevent him from devoting his entire energies to his client’s interests’ [citation]. The result would be both ‘an undue burden on the profession’ [citation] and a diminution in the quality of the legal services received by the client.” (Ibid.)[2]
Since Goodman is obviously distinguishable from the case at bench, it is not binding authority for this court in the case at bench. Further, it is to be noted that the Goodman rationale, which sets forth that no duty is owed from an attorney to a third party who deals at arm’s length with the attorney’s client, was decided by a divided court. Thus, a dissenting opinion made this observation: “I conclude that defendant should be held to owe a duty to plaintiffs. I disagree with the majority’s conclusion that the imposition of liability in this case will result in an undue burden upon the legal profession. The contention is not persuasive that the right to recover for malpractice must be limited to the client on a theory that ‘if we go one step beyond that, there is no reason why we should not go fifty.’ [Citation.] Attorneys are not provided the insulation of mere agents. As the Supreme Court has said many times, they ‘are officers of the law, as well as the agents by whom they are employed.’ [Citation.]” (Goodman, *359 supra, 18 Cal.3d 335, 353; Justice Mosk dis., with Justice Tobriner concurring in the dis. opn.)
The majority opinion relies upon the Held case as being factually similar to the case at bench and, hence, dispositive in favor of the position taken by lawyer II. I disagree with the majority’s conclusion that Held is dispositive of the case before us. In the first place, Held does not deal with the issue of whether lawyer I should have a claim for partial indemnity against lawyer II based upon the comparative fault principles set forth in American Motorcycle Assn. v. Superior Court (1978) 20 Cal.3d 578 [146 Cal.Rptr. 182, 578 P.2d 899].
In addition, I disagree with the majority in believing that the teaching of cases such as Goodman and Held is to the effect that exposure to the client’s potential adversaries would prevent a lawyer from devoting his entire energies to his client’s interests. If this is the teaching of Goodman and Held, I would describe it as dicta and “unsound teaching” which ought not to be followed by this court. I agree with the views of the dissent in the Goodman case that this theory that an attorney will not devote his entire energies to his client’s interests because of some fear of exposure of liability to the third party dealing with the client is simply not persuasive reasoning. Since Held was not decided by the California Supreme Court, this court is certainly not bound to follow the decision. (See Auto Equity Sales, Inc. v. Superior Court (1962) 57 Cal.2d 450 [20 Cal.Rptr. 321, 369 P.2d 937].)
It is my view that Goodman, Held and Norton should not be considered persuasive to any degree since these three cases were decided prior to the Supreme Court’s decision of American Motorcycle. I see the issue raised by lawyer IPs demurrer to lawyer I’s cross-complaint and by lawyer II’s petition before us as presenting the question of whether the general rules of partial indemnity, based on comparative-fault principles enunciated in American Motorcycle, are to be made applicable when the alleged joint tortfeasor is an attorney (lawyer II) who represents the victim (client) of another attorney’s malpractice (lawyer I) and is now accused by the first attorney of negligently mishandling the client’s interests following the first act of malpractice and thereby enhancing the client’s damages.
It is my view that there is no rational basis for not applying the principles of American Motorcycle to the case at bench. When lawyer II made the decision to represent the client, Schlumberger, in connection with the problems created by lawyer I’s prior representation of Schlum *360 berger, lawyer II certainly had every reason to believe that lawyer I would seek to hold him liable for any malpractice on his part which might increase the amount of damages which Schlumberger would undoubtedly seek to recover from lawyer I.
I consider the principle sound that, since privity with a negligent attorney is no longer a prerequisite to an action for legal malpractice (see Lucas v. Hamm (1961) 56 Cal.2d 583 [15 Cal.Rptr. 821, 364 P.2d 685] and Heyer v. Flaig (1969) 70 Cal.2d 223 [74 Cal.Rptr. 225, 449 P.2d 161]), an attorney ought to be held liable for his negligence to anyone who foreseeably may be damaged by such negligence. This is the view enunciated by American Motorcycle, and I see no sound public policy reasons for carving out an exception to the principles of American Motorcycle in order to protect a negligent lawyer. In the case before us, no reasonable justification is advanced to protect an attorney from being sued for malpractice by an attorney as a third party who had a prior relationship with the same client.
The alleged public policy of insuring that an attorney will devote his full energies to his client’s interests, set forth in Goodman, Held and Norton, simply evaporates under the circumstances of the instant case. The rule of law of comparative-fault principles, set forth in American Motorcycle, is supported by a much stronger public policy than a rule of law which protects a lawyer from liability for negligence to a person who deals with the lawyer’s client.
Under the facts presented by the instant case, it is tenuous and speculative at best to conclude that permitting cross-complaints by lawyer I against lawyer II in a malpractice action against lawyer I will distort and adversely affect lawyer II’s ability to devote his best efforts to serving his client. The Goodman, Held and Norton rationale rests on an unexamined and unpersuasive hypothesis, namely, the belief that the possibility of an attorney’s liability to third parties for negligence in advising a client will inhibit an attorney’s best representation of his client even in a situation where there is no conflict between the interest of the client and the third party.
To impose a duty of due care on lawyer II in favor of lawyer I in the case at bench represents no addition or conflict in the duties imposed upon lawyer II, since the duty imposed is already the very same duty owed by lawyer II to his client to exercise due care. If lawyer II does not exercise due care with respect to his client who is also a former client of *361 lawyer I and, as a result, increases the damages suffered by the client from lawyer I’s negligence, why shouldn’t lawyer II be liable for the increased damages resulting from his negligence? My answer to this question is simple. He should be liable. Hence, I would discharge the alternative writ and dismiss Gibson’s petition.
The petition of the real parties in interest for a hearing by the Supreme Court was denied August 22, 1979.

I recognize that this court, after having denied lawyer II’s petition, was ordered by the California Supreme Court to issue an alternative writ of mandamus and/or prohibition, and to reconsider the issues presented in light of Goodman and Held and also in light of Norton v. Hines (1975) 49 Cal.App.3d 917 [123 Cal.Rptr. 237],

In a footnote, the Supreme Court cites Norton v. Hines (1975) 49 Cal.App.3d 917 [123 Cal.Rptr. 237], and explained Norton by stating: “[A] party who had successfully defended a civil suit filed a complaint against his opponent’s attorney claiming damages for the attorney’s negligence in advising prosecution of the suit but failing to allege the elements of an action for malicious prosecution. In holding that no cause of action was stated the court properly expressed concern that if an attorney is made liable to his client’s adversary for mere negligence in advising commencement of a suit, ‘lawsuits now justifiably commenced will be refused by attorneys, and the client, in most cases, will be denied his day in court.’ (49 Cal.App.3d at p. 923.)” (Goodman, supra, 18 Cal.3d 335, 344-345.)