Stephen MOSKOWITZ, on behalf of himself and all others similarly situated, Plaintiff,

v.

VITALINK COMMUNICATIONS CORPORATION and George Archuleta, Defendants.

No. C 90–1717 SAW.

United States District Court, N.D. California.

Oct. 30, 1990.

James Finberg, Elizabeth Cabraser, Lieff, Cabraser & Heimann, San Francisco, Cal., Lowey, Dannenberg, Bemporad & Selinger, PC, New York City, for plaintiff.

Jared L. Kopel, Wilson, Sonsini, Goodrich & Rosati, Palo Alto, Cal., for defendants.

## MEMORANDUM AND ORDER

WEIGEL, District Judge.

Plaintiff Moskowitz is the individual representative of a class action suit against defendants Vitalink Communications Corporation ("Vitalink") and George Archuleta. Plaintiff sues (1) for violation of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j; 17 C.F.R. § 240.10b–5, and (2) for common law negligent misrepresentation.

Defendant Vitalink is a Delaware corporation with principal offices in Fremont, California. Vitalink manufactures and markets communications products that interconnect local area computer networks to form a wide area computer network. Defendant Archuleta was the President, Chairman, and Chief Executive Officer of Vitalink until his resignation on June 13, 1990.

Plaintiff's claims arise out of defendants' allegedly materially misleading statements regarding Vitalink's financial performance and business prospects and failure to disclose the "true facts" on these topics. Throughout late 1989 and early 1990, before the date the class period commences,[1] defendants issued a series of public statements and reports regarding Vitalink's performance that plaintiff characterizes in his Memorandum in Opposition as "misleading" and "overly optimistic." For example, the company asserted that it was "well positioned to be a leader in the growth of the broader LAN internetworking market into the 1990s," and that with new enhancements, the company's TransPATH system would become the "industry-leading bridge/multi-protocol router."

On April 17, 1990, Vitalink issued a press release that provided factual data regarding financial performance in the quarter ending March 31, 1990. Plaintiff contends that the following portion of this release was materially misleading:

Digital Equipment Corporation accounted for 35% of the company's business in the second quarter, compared to 40% in the prior quarter and 46% for the fiscal year 1989. "The solid performance this quarter attests to the company's ability

---

1. The class period spans from April 17, 1990 to June 13, 1990. The class has not yet been certified.

to manage a balanced distribution strategy," said George Archuleta, Vitalink's Chairman and CEO. "Our decision to strengthen distribution channels has paid off in continued growth of direct sales and has enabled us to maintain solid sales in the current quarter."

Plaintiff claims that these statements were materially misleading because facts known to Vitalink at that time indicated that it had not solved the problem of its excessive dependence upon Digital Equipment Corporation ("Digital"), Vitalink's long-time principal buyer. Additionally, plaintiff contends that defendants knew or recklessly failed to know that Vitalink was not experiencing a "continued growth of direct sales," nor "solid sales in the current quarter."

Plaintiff alleges that as a result of defendants' misrepresentations and nondisclosures, the price of Vitalink stock was artificially inflated during the class period. On June 14, 1990, Vitalink issued a press release representing that defendant Archuleta had "resigned" from the company. Archuleta allegedly stated to one financial analyst that in fact he had been fired by the Board of Directors because of Vitalink's financial difficulties. On that same day, a DOW Jones wire story quoted Donald Herman, Archuleta's replacement, as advising that "there is a reasonable probability" that Vitalink's earnings for the third quarter, ending June 30, would be below the $.21 to $.28 per share anticipated by the analysts.

In response to some or all of these adverse disclosures concerning Vitalink, on June 14, 1990, Vitalink common stock dropped 25.2%, or $3.25 per share, from $12.875 (the previous day's closing price) to $9.625 per share on a heavy trading volume of over 3.5 million shares. This decline was purportedly the day's worst percentage decline in the over-the-counter market. Defendants move to dismiss both claims against them.

## I. The Rule 10b–5 Claim

Urging dismissal of plaintiff's 10b–5 claim, defendants contend that: (1) Plaintiff's entire case centers solely on Vitalink's April 17, 1990 press release, and that statement is as a matter of law not misleading; (2) Plaintiff fails to plead loss causation, or proximate cause, a necessary element of a Rule 10b–5 claim; and (3) Plaintiff fails to plead facts from which it may be inferred that defendants acted with scienter with the specificity required by Federal Rule of Civil Procedure 9(b). Each of these contentions will be considered in turn.

### (1) *The April 17, 1990 Press Release*

■ Defendants contend first that plaintiff's entire case centers exclusively upon the April 17, 1990 press release issued by Vitalink. Plaintiff counters that this release comprises only part of its case since defendants' pre-class period reports in late 1989 and early 1990 were purportedly "overly optimistic" with respect to the company's performance and financial health. Defendants' point is well-taken. The complaint itself quotes these earlier statements but does not allege that they are either misleading, false, or overly optimistic. Complaint, paras. 10, 11, 13 & 14. This Court is constrained to consider the sufficiency of allegations contained in the complaint, not in plaintiff's opposition papers. *See Alfus v. Pyramid Technology Corp.*, 745 F.Supp. 1511, Fed.Sec.L.Rep. (CCH) ¶ 95,207, at 95,846 (N.D.Cal.1990) (ignoring essential allegations made in the opposition brief but not in the complaint).

Plaintiffs contend, however, that under the "mosaic doctrine," this Court may consider *all* of defendants' statements referenced in the complaint to determine whether, viewed as a whole, they create a misleading impression of Vitalink's fiscal health and performance. The Court notes, as an initial matter, that the legitimacy of the mosaic doctrine in this Circuit is as yet uncertain.[2] The Court need not reach the

---

**2.** *Compare In re Apple Computer Sec. Litig.*, 886 F.2d 1109, 1118 (9th Cir.1989), *cert. denied*, — U.S. —, 110 S.Ct. 3229, 110 L.Ed.2d 676 (1990)

(considering each challenged statement individually) *and Alfus*, 745 F.Supp. 1511, Fed.Sec.L. Rep. (CCH) ¶ 95,207, at 95,846 (same) *with SEC*

question of the doctrine's validity because the complaint is not sufficient to invoke it. The complaint fails to allege either that the pre-April 17, 1990 statements were themselves misleading or materially incomplete, or that they were in fact true, but contributed to an overall misleading impression. The Court therefore dismisses with leave to amend plaintiff's 10b–5 claim to the extent it is based on statements other than the April 17, 1990 press release.

■ This brings the Court to the question of whether the April 17, 1990 release was not misleading as a matter of law, as defendants contend. According to plaintiff, the release contained three representations of fact: (1) that Vitalink had developed the "ability to manage a balanced distribution strategy"; (2) that Vitalink had experienced "continued growth of direct sales"; and (3) that Vitalink was maintaining "solid sales in the current quarter." Plaintiff asserts that each of these representations was false. Defendants counter that a "plain reading" of the press release reveals that these representations concerned only the previous quarter, which ended on March 31, 1990, not the third quarter, during which the representations were made. Accordingly, defendants could not have been making any forecasts with respect to the third quarter—the quarter which saw the stock dramatically plunge in value and defendant Archuleta "resign."

In his Memorandum in Opposition, plaintiff argues that defendants' optimistic language in the release did in fact refer to the third, rather than the second, quarter. Unfortunately, a "plain reading" of the press release does not resolve the parties' dispute. On the one hand, the statements in question immediately follow a discussion of the second quarter's performance, but on the other, defendant Archuleta referred to the "solid performance *this quarter*" and the company's "solid sales *in the current quarter*." Given this factual dispute, it is improper for the Court to decide as a matter of law whether the representations were misleading. *See Marx v. Computer Sciences Corp.*, 507 F.2d 485, 492 (9th Cir. 1974) (whether the failure to disclose was an omission to state a material fact necessary to make the statements not misleading is a factual determination for the jury); *In re Seagate Technology II Sec. Litig.*, Fed.Sec.L.Rep. (CCH) ¶ 94,502, at 93,201, 1989 WL 222969 (N.D.Cal.1989) (court will dismiss misrepresentation claims only if a review of the alleged omissions does not raise factual questions or require information beyond the reports cited in the complaint).[3]

Moreover, even if defendants' statements in the press release did refer to the previous, rather than the then-current quarter, plaintiff nonetheless makes out a bare-bones claim. At a minimum, these statements can be construed as a general expression of optimism regarding Vitalink's condition. The Ninth Circuit has held that "projections and general expressions of optimism may be actionable under the federal securities laws." *In re Apple Computer Sec. Litig.*, 886 F.2d 1109, 1113 (9th Cir. 1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 3229, 110 L.Ed.2d 676 (1990). At this early stage of the litigation, it cannot be determined as a matter of law that the April 17,

---

*v. C.R. Richmond & Co.*, 565 F.2d 1101, 1106–07 (9th Cir.1977) (acknowledging that advertisements could be "deceptive and misleading *in their overall effect* even though when narrowly and literally read, no single statement of a material fact was false") (emphasis in original) *and Cytryn v. Cook*, Fed.Sec.L.Rep. (CCH) ¶ 95,409, at 97,014, 1990 WL 128233 (N.D.Cal.1990) (applying mosaic doctrine to series of statements) *and In re Genentech, Inc.*, Fed.Sec.L.Rep. (CCH) ¶ 94,544, at 93,479, 1989 WL 106834 (N.D.Cal. 1989) (same).

**3.** In their Reply Memorandum in Support, defendants point to the deposition taken of the named plaintiff, Dr. Stephen Moskowitz, in which he states that he believes that the statements in question did in fact refer to the second, rather than the third quarter. This deposition testimony is in direct conflict with plaintiff's opposition papers. However, as the motion before the Court is a motion to dismiss for failure to state a claim, and not a motion for summary judgment, it is improper to consider matters outside the pleadings without first giving plaintiff the opportunity to respond and to conduct discovery. William W. Schwarzer, A. Wallace Tashima, James M. Wagstaffe, *California Practice Guide: Federal Civil Procedure Before Trial* ¶¶ 9:238–40 (1989).

1990 press release was not misleading and materially incomplete. *See Usher v. City of Los Angeles,* 828 F.2d 556, 561 (9th Cir.1987) (on a motion to dismiss, courts must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party).

### (2) *Loss Causation*

■ "In an action brought under Rule 10b–5 for material omissions or misstatements, the plaintiff must prove both transaction causation, that the violations in question caused the plaintiff to engage in the transaction, and *loss causation,* that the misrepresentations or omissions caused the harm." *Securities Investor Protection Corp. v. Vigman,* 908 F.2d 1461, 1467 (9th Cir.1990) (citation omitted) (emphasis added). Loss causation, the Ninth Circuit further noted, is just another term for proximate cause. *Id.* A plaintiff must plead that his loss is the *result of* the defendant's wrongdoing. *In re Fortune Sys. Sec. Litig.,* 680 F.Supp. 1360, 1365 (N.D.Cal.1987). Defendants contend that Vitalink's stock dropped in value as a result of the announcement of defendant Archuleta's resignation. Archuleta's resignation, they argue, was an independent intervening event breaking the causal chain between defendants' alleged omissions and the loss suffered by plaintiff as a result of Vitalink's stock's precipitous decline.

Defendants' contention is unfounded. Accepting plaintiff's factual allegations as true, as this Court must, defendant Archuleta resigned as a result of Vitalink's poor financial performance—information that plaintiff contends should have been disclosed. Thus Archuleta's resignation was a *dependent,* rather than *independent,* cause of the stock's plunge. The cases cited by defendants for the proposition that intervening causes disrupt the

causal chain involved truly independent causes of the plaintiffs' losses, such as a market fluctuation or a change in SEC regulations.

Furthermore, plaintiff alleges that the stock drop was also caused by the new CEO's warning that there was a "reasonable probability" that Vitalink's third-quarter earnings would be below analysts' estimates. In response to these adverse disclosures, which allegedly should have been made long ago, Vitalink's stock lost its artificially inflated value. Plaintiff therefore has sufficiently pleaded that the class's loss resulted from defendants' purportedly misleading statements.

### (3) *Scienter*

■ To state a Rule 10b–5 claim, a plaintiff must allege that the defendant acted with *scienter,* "a mental state embracing intent to deceive, manipulate, or defraud." *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 194 n. 12, 96 S.Ct. 1375, 1381 n. 12, 47 L.Ed.2d 668 (1976). Defendants contend that plaintiff has failed to plead defendants' fraudulent intent with the specificity required by Federal Rule of Civil Procedure 9(b).[4]

Plaintiff asserts that in making the allegedly misleading statements in the April 17, 1990 press release, defendants "knew," "recklessly disregarded," and "but for their recklessness failed to know," that Vitalink had not cured its over-dependence on Digital and that it was not experiencing a "continued growth of direct sales," or "solid sales in the current quarter." Complaint, para. 16. Plaintiff does not provide any factual source for its conclusion that defendants possessed this fraudulent mental state.

The Court notes that there is a disagreement within this District regarding the detail with which a 10b–5 plaintiff is required to plead scienter.[5] The Ninth Circuit, however, has held that a pleading satisfies Rule

---

4. Rule 9(b) provides:

**Fraud, Mistake, Condition of the Mind.** In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

5. *Compare In re 3Com Sec. Litig.,* Fed.Sec.L.Rep. (CCH) ¶ 95,270, at 96,247, 1990 WL 86875 (N.D. Cal.1990) (scienter may be averred generally in the pleadings) *and In re Worlds of Wonder Sec. Litig.,* 721 F.Supp. 1140, 1145 (N.D.Cal.1989) (same) *with Alfus v. Pyramid Technology Corp.,* 745 F.Supp. 1511, Fed.Sec.L.Rep. (CCH)

9(b)'s particularity requirement "if it identifies 'the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations.'" *Deutsch v. Flannery*, 823 F.2d 1361, 1365 (9th Cir.1987), *cert. denied,* —— U.S. ——, 111 S.Ct. 62, 112 L.Ed.2d 37 (1990). "Rule 9(b) does not ... require plaintiffs in a securities fraud case to set forth facts which, because no discovery has yet occurred, are in the exclusive possession of the defendants." *Id.* (citation omitted). Plaintiff has supplied defendants with a sufficiently complete description of the circumstances constituting fraud. Defendants should be able to devise an adequate answer to the allegations. Indeed, they do not contend that they are unable to do so.[6]

For these reasons, the Court denies defendants' motion to dismiss with respect to the April 17, 1990 press release, and grants the motion to dismiss, but with leave to amend, with respect to defendants' pre-April 17 reports.

### II. Negligent Misrepresentation

■ Defendants contend that plaintiff cannot state a claim for negligent misrepresentation under California law because such claims cannot be based on "aftermarket" statements. Aftermarket statements are those made after a public stock offering rather than in the offering prospectus. *In re Wyse Technology Sec. Litig.*, 744 F.Supp. 207, Fed.Sec.L.Rep. (CCH)

¶ 95,207, at 95,848 (N.D.Cal.1990) (dismissing complaint for failure to allege basis for scienter allegation) *and In re Wyse Technology Sec. Litig.*, 744 F.Supp. 207, Fed.Sec.L.Rep. (CCH) ¶ 94,972, at 95,432 (N.D.Cal.1990) (same).

**6.** Defendants point to the named plaintiff's deposition testimony to show that plaintiff's scienter allegation is groundless. Again, the Court refrains from considering matters outside the pleadings where the plaintiff has had no opportunity to conduct discovery or respond to defendants' arguments.

**7.** The six factors to be considered are (1) the extent to which the transaction was intended to affect the plaintiff; (2) the foreseeability of the harm to the plaintiff; (3) the degree of certainty that the plaintiff suffered injury; (4) the closeness of the connection between the defendant's conduct and the injury suffered; (5) the moral blame attached to the defendant's conduct; and (6) the policy of preventing future harms.

¶ 94,972, at 95,432 (N.D.Cal.1990). This contention is well-taken.

Under California law, liability for negligent misrepresentation attaches only when the plaintiff establishes that the defendant breached a duty of care owed to him. *Goodman v. Kennedy*, 18 Cal.3d 335, 342, 556 P.2d 737, 742, 134 Cal.Rptr. 375, 380 (1976). Applying the six factors set forth by the California Supreme Court in *Goodman* as to when a defendant will be held liable to a third person not in privity,[7] seven judges in this District have found that negligent misrepresentation claims cannot be based upon aftermarket statements.[8] These judges reasoned that unlike statements made in connection with a public offering, those made in routine SEC filings, press releases, and shareholder reports are not intended to affect future shareholders. *See, e.g., Alfus*, 745 F.Supp. 1511, Fed.Sec. L.Rep. (CCH) ¶ 95,207, at 95,851; *Wyse*, 744 F.Supp. 207, Fed.Sec.L.Rep. (CCH) ¶ 94,972, at 95,432. Hence the statements are not "intended to affect the plaintiff." Moreover, a broader liability rule would render the liability of corporations and their officers and directors "vast and limitless." *See, e.g., Genentech*, Fed.Sec.L.Rep. (CCH) ¶ 94,544, at 93,482; *Weinberger*, slip op. at 8–9. Such expansive liability is unwarranted in light of the broad protections afforded plaintiffs under federal and state securities laws. *Id.*

*Goodman*, 18 Cal.3d at 342–43, 556 P.2d at 742, 134 Cal.Rptr. at 380.

**8.** *Alfus v. Pyramid Technology Corp.*, 745 F.Supp. 1511, Fed.Sec.L.Rep. (CCH) ¶ 95,207, at 95,851 (N.D.Cal.1990) (Peckham, J.); *In re Wyse Technology Sec. Litig.*, 744 F.Supp. 207, Fed.Sec. L.Rep. (CCH) ¶ 94,972, at 95,432 (N.D.Cal.1990) (Orrick, J.); *In re Genentech, Inc.*, Fed.Sec.L. Rep. (CCH) ¶ 94,544, at 93,482 (N.D.Cal.1989) (Jensen, J.); *Levy v. Eletr*, 724 F.Supp. 1269, 1273 (N.D.Cal.1989) (Smith, J.); *In re Seagate Technology II Sec. Litig.*, Fed.Sec.L.Rep. (CCH) ¶ 94,502, at 93,204 (N.D.Cal.1989); (Aguilar, J.); *In re Worlds of Wonder Sec. Litig.*, 694 F.Supp. 1427, 1436 (N.D.Cal.1988) (Conti, J.); *Weinberger v. Schroeder*, No. C–84–20757–WAI, slip op. at 8 (N.D.Cal. Oct. 28, 1986) (Ingram, J.). *But see In re Convergent Technologies Second Half 1984 Sec. Litig.*, No. C–85–20120 SW, 1988 WL 215412 (N.D.Cal. May 23, 1988) (Williams, J.) (allowing negligent misrepresentation claim).

Claiming that defendants should reasonably have foreseen that prospective buyers would be harmed by defendants' misleading statements, plaintiff argues that this Court should apply the "reasonable foreseeability" test of *International Mortgage Co. v. John P. Butler Accountancy Corp.*, 177 Cal.App.3d 806, 819, 223 Cal.Rptr. 218, 227 (1986). In that case the court applied the foreseeability test to extend a negligent public auditor's liability to adversely affected third parties. All seven judges in this District who have dismissed aftermarket negligent misrepresentations claims have considered the applicability of *Butler* to the securities fraud context and concluded that *Butler* was based on the independent auditor's "unique public function," which is not parallel to corporations' obligations toward prospective shareholders. *See, e.g., Alfus*, 745 F.Supp. 1511, Fed.Sec.L.Rep. (CCH) ¶ 95,207, at 95,851. In fact, the reasonable foreseeability test of *Butler* has not been extended beyond the public accountant context. The recent case *Bily v. Arthur Young & Co.*, 222 Cal.App.3d 289, 271 Cal. Rptr. 470 (1990), cited by plaintiff, does nothing to negate this fact. *Bily* reaffirmed the *Butler's* foreseeability test in a case which again involved public auditors.

The Court agrees with the seven decisions of judges of this Court and dismisses with prejudice plaintiff's negligent misrepresentation claim.

Accordingly,

IT IS HEREBY ORDERED that:

(1) Defendants' motion to dismiss plaintiff's Rule 10b–5 claim is GRANTED with leave to amend with respect to statements other than the April 17, 1990 press release;

(2) Defendants' motion to dismiss plaintiff's Rule 10b–5 claim is DENIED with respect to the April 17, 1990 press release; and

(3) Defendants' motion to dismiss plaintiff's negligent misrepresentation claim is GRANTED with prejudice.