Filed 10/25/13  Roupinian v. Doss Law CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| EDWARD ROUPINIAN, Individually and as Cotrustee, etc., et al., | B242655 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC404638) |
| v. | |
| DOSS LAW et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Mary Ann Murphy, Judge.  Affirmed.

Robert D. Feighner; Hitchcock, Bowman & Schachter and Robert B. Schachter for Plaintiffs and Appellants Edward Roupinian, Arlene Roupinian, Alice Hoch and Millennium Trust Company, LLC.

Nemecek & Cole, Jonathan B. Cole, Mark Schaeffer and Robert Scott Silver for Defendants and Respondents Doss Law, Kristin L. Yokomoto and Gregory S. Page.

————————————

Edward Roupinian and Arlene Roupinian, individually and as Trustees of the Roupinian Family Trust dated January 5, 1987, Alice Hoch, and Millennium Trust Company as Custodian of the Edward Roupinian IRA appeal judgment after the trial court sustained defendants Doss & Page, Doss Law, and Kristin L. Yokomoto's (collectively Doss) demurrer to plaintiffs' complaint for wrongful foreclosure and damages.  Plaintiffs invested in interests in trust deeds that were offered by defendant California Western Financial Investments, Inc. (California Western) and contend they were the intended beneficiaries of negligently prepared documents provided by Doss in connection with California Western's procurement of a permit from the Department of Corporations to issue the trust deed interests.  We affirm.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

1.	*Plaintiff's Complaint, Second Amended Complaint, and Third Amendment to Second Amended Complaint*

Plaintiffs Edward and Arlene Roupinian were the trustees of the Roupinian Family Trust dated January 5, 1987 (Trust).  Plaintiff Millennium Trust Company (Millennium) was the custodian of the Trust and Edward Roupinian's IRA.

California Western, a mortgage broker, solicited investments in notes secured by trust deeds.  California Western's offering circular stated that California Western was offering to qualified investors whole or fractional interests in notes secured by trust deeds (Loan Interests).  The Loan Interests represented either "total ownership by a single investor, referred to as a whole loan sale, or a tenancy in common fractional interest in a Loan that is secured directly or collaterally by one or more deeds of trust on real property."  California Western was to act as broker of the loan, prepare the loan papers and service the Loan.

The offering circular informed investors that the Loan Interests sold were not immediately liquid because they were not redeemable and were not traded on any exchange; further, there was a limited secondary market for the resale of the Loan Interests and there were restrictions on sale of the Loan Interests.  No market for the Loan

2

Interests was expected to develop in the future, and potential investors should be prepared to hold the Loan Interests for the entire term of the loan.

The Circular stated that "[t]he details of each Loan will be provided in a 'LENDER-PURCHASER DISCLOSURE STATEMENT,' in a format substantially similar to the Department of Real Estate Forms 851A, 851B or 851D . . . .[1]  Upon request, [California Western] will provide prospective Investors with an appraisal on the property or properties that will secure the Loan as well as credit information about the borrower and a copy of the Loan documents."

Beginning in 2006, plaintiffs invested $5 million with California Western based on a package of documents containing the loan application of the borrower, the appraisal report of the subject property, the proposed terms of the loan, and a disclosure form. They alleged the disclosure form was intended to permit proposed lenders (such as the Roupinians) to evaluate the proposed loan.

However, California Western failed to ensure the creditworthiness of the borrowers, failed to properly review the borrowers' financial status, failed to obtain independent and reasonable appraisals of the properties, failed to monitor release of funds, and failed to monitor the progress of the one- and two-year construction loans. Plaintiffs further alleged that California Western and its agents and representatives misrepresented that the loans were good and safe investments.  In fact, the borrowers had inadequate financial ability to repay the loans, had inadequate credit, the properties used as collateral had insufficient equity value, and the appraisals were not accurate.

Plaintiffs filed their the complaint on December 29, 2008.  Plaintiffs sought judicial foreclosure of numerous trust deeds securing interests in 16 different promissory

---

[1] The contents of Form RE 851A is set forth in Business and Professions Code section 10232.5.  The information disclosed on Form RE 851A includes the amount of the loan, information about the broker, the broker's capacity, the terms of the loan, servicing arrangements, and information about the borrower, including the borrower's income and expenses. (Bureau of Real Estate, Form RE 851A, Lender/Purchaser Disclosure Statement.)

notes.  Roupinian's IRA or the Roupinian Family Trust is listed, along with other investors, as the "lender" on these notes.  On June 30, 2009, plaintiffs filed the second amended complaint, and on September 26, 2011, filed their third amendment to second amended complaint to add Doss as Doe defendants, alleging a claim for negligence against Doss based upon its submission to the Department of Corporations of the application for California Western's permit to sell the Loan Interests pursuant to Corporations Code section 25113.[2]  Plaintiffs did not learn of Doss's involvement until late 2010.

The application was submitted to the Department of Corporations by Doss in July 2005 in connection with California Western's renewal of its permit to offer and sell securities.  The materials included California Western's application for a permit as well as copies of the offering circular which included the redacted Form RE 851A; filing fees; California Western's financial statements as of December 31, 2004; and California Western's corporate real estate license.  The application sought a permit for the issuance and sale of securities under the Corporate Securities Act of 1968, section 25113, subdivision (b)(1).

However, plaintiffs asserted Doss used a Form RE 851A in connection with the offering circular that was reduced from six to three pages, and Doss prepared or approved the modified disclosure Form RE 851A attached to the offering circular, and advised the Department of Corporations that the revised and modified RE 851A was "substantially similar" to the Bureau of Real Estate's Form RE 851A when in fact the Form RE 851A that was used deleted substantial important information.  The modified Form RE 851A removed substantial portions of information from Form RE 851A, including:  broker information, broker capacity in the transaction, transactional information, multi-lender transaction information, portions of borrower information, servicing arrangement information, portions of encumbrance information, portions of loan-to-value information,

---

[2] All further statutory references are to the Corporations Code unless otherwise indicated.

and the disclosure statement summary. Plaintiffs alleged the specific information removed included information concerning whether the broker's financial statement had been audited, information regarding balloon loans, information on loan-to-value ration, information as to other encumbrances, whether any payments had been late in the past 12 months; whether proceeds would be used to cure delinquencies, whether payments were still delinquent, and information regarding subordinated loans.

Further, plaintiffs alleged Doss sought approval for such documents knowing that they would be used to provide disclosure information to investors, including plaintiffs, and had a duty to make a reasonable independent review of such documents to determine whether there was missing or misleading information and whether the documents were in compliance with California law. Doss knew that the information would be provided to potential investors who would rely on such information. Plaintiffs alleged they were intended beneficiaries of Doss's legal services rendered to California Western. Plaintiffs alleged that if they had received full and complete information, they would have known that many of the borrowers had not paid taxes, were in default, and had additional encumbrances such that plaintiffs would not have made the investment.

### 2. *Doss's Demurrer*

Doss filed a demurrer, arguing that it represented the lender, not plaintiffs, in submitting the application to the Department of Corporations for purposes of obtaining a permit for California Western to make the public offering. As a result, Doss had no duty to plaintiffs because there was no privity between plaintiffs and Doss. Further, any exception to this rule—where there is a known, intended beneficiary of the attorney's services, or the advice is given to the client for the purposes of being transmitted to a third party so that the third party may rely on it—did not apply because the principal purpose of Doss's retention was to provide services for the benefit of the lender in obtaining a permit from the Department of Corporations. Further, Form RE 851A was not required because California Western's offering was a public offering governed by the Corporate Securities Act of 1968, section 25113, subdivision (b)(1). Finally, the

Department of Corporations approved Doss's submission, and because Doss complied with the law, it could not be liable based on the form of the offering. Finally, Doss argued plaintiffs' claims were barred by the statute of limitations in Code of Civil procedure section 340.6 because the work Doss performed in 2005 was more than five years before the filing of the relevant Doe amendments, and plaintiffs' claims did not relate back because the Department of Corporations documents were a matter of public record.

Plaintiffs' opposition argued that they relied on information provided by California Western in its role as broker arranging the loans between plaintiffs and third parties, and the Form RE 851A Doss submitted to the Department of Corporations was altered because it did not contain all six pages and thus did not contain the required disclosures. Plaintiffs contended Doss could be liable for negligent misrepresentations made to investors who were the intended recipients of its opinion, relying on *Roberts v. Ball, Hunt, Brown & Baerwitz* (1976) 57 Cal.App.3d 104. Finally, plaintiffs did not discover Doss's role in the offering until late 2010, entitling them to the delayed discovery rule.

The trial court took the matter under submission, after which it issued its order sustaining Doss's demurrer without leave to amend.

## I.  STANDARD OF REVIEW

On appeal from an order dismissing an action after the sustaining of a demurrer without leave to amend, we independently review the pleading to determine whether the facts alleged state a cause of action under any possible legal theory. (*McCall v. PacifiCare of Cal., Inc.* (2001) 25 Cal.4th 412, 415.) We may also consider matters that have been judicially noticed. (*Committee for Green Foothills v. Santa Clara County Bd. of Supervisors* (2010) 48 Cal.4th 32, 42.) We give the complaint a reasonable interpretation, "treat[ing] the demurrer as admitting all material facts properly pleaded," but do not "assume the truth of contentions, deductions or conclusions of law." (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 967; *Evans v. City of Berkeley* (2006) 38 Cal.4th 1, 20 [demurrer tests sufficiency of complaint based on facts included in the

6

complaint, those subject to judicial notice and those conceded by plaintiffs].) We liberally construe the pleading with a view to substantial justice between the parties. (Code Civ. Proc., § 452; *Mendoza v. Continental Sales Co.* (2006) 140 Cal.App.4th 1395, 1401.)

## II.    THIRD PARTY BENEFICIARY

### A.    Form RE 851A

The Corporate Securities Act of 1968 provides the framework through which securities may be sold in California. All offers and sales of securities made in California must be qualified with the Corporations Commissioner unless there is a specific exemption. (§§ 25110, 25120, 25130.) There are three methods to qualify offers and sales of securities, and depending on the character of the security and the transaction involved: (a) coordination (§ 25111); (b) notification (§§ 25112, 25131); and (c) permit (§§ 25113, 25121).

Here, the Loan Interests were to be sold pursuant a permit issued under section 25113, subdivision (b)(1), which provides, "An application for a permit under this section shall contain any information and be accompanied by any documents as shall be required by rule of the commissioner, in addition to the information specified in Section 25160 and the consent to service of process required by Section 25165. For this purpose, the commissioner may classify issuers and types of securities." In turn, section 25160 provides in relevant part, "Every application for qualification shall state (1) the maximum amount of securities proposed to be offered in this state; and (2) any adverse order, judgment, or decree entered in connection with the offering by the regulatory authority in any state or by any court or by the Securities and Exchange Commission."

Division 4, part 1, chapter 3, article 5 of the Business and Professions Code governs real estate disclosure. Form RE 851A is mandated by Business and Professions Code section 10232.4. The required contents of the form are set forth in Business and Professions Code section 10232.5, subdivision (a). However, the broker is not required to give the disclosure statement where the secured obligation is offered, as it was here,

7

under a permit issued for the sale of a real property security requiring the delivery of a prospectus or other disclosure statement to the purchaser. (Bus. & Prof. Code, § 10232.4, subd. (b)(1).) Thus, no disclosure with a Form RE 851A was required in the offering circular because the mortgages here were fractionally securitized and issued under the Corporate Securities Act of 1968. As a result, Doss's use of a redacted Form RE 851A cannot form the basis of any negligence liability.

### B.    Attorney-Client Relationship

The existence of an attorney-client relationship is essential to the "duty" element of a claim for professional negligence. As a general rule, attorneys have no professional obligation to nonclients and thus cannot be held liable to nonclients for the consequences of their professional negligence. "[A]n attorney will normally be held liable for malpractice only to the client with whom the attorney stands in privity of contract, and not to third parties." (*Borissoff v. Taylor & Faust* (2004) 33 Cal.4th 523, 529.) Despite the general "privity of contract" rule, an attorney may be liable to nonclients under certain, limited circumstances where the nonclient was the intended beneficiary of the attorney's services or where the foreseeability of harm to the nonclient from the attorney's professional negligence outweighs other policy considerations. (*St. Paul Title Co. v. Meier* (1986) 181 Cal.App.3d 948, 950.)

Factors considered in evaluating the intended beneficiary foreseeable harm exceptions include "the extent to which the transaction was intended to affect the plaintiff, the foreseeability of the harm to [the plaintiff], the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, and the policy of preventing future harm." (*Biakanja v. Irving* (1958) 49 Cal.2d 647, 650.) In addition, the court may consider the likelihood that imposition of liability may interfere with the attorney's ethical duties to his or her client (*Goodman v. Kennedy* (1976) 18 Cal.3d 335, 344) and the burden that extension of liability would place on the professional. (*Bily v. Arthur Young & Co.* (1992) 3 Cal.4th 370, 411, fn. 18.)

8

In the context of securities, in *Goodman v. Kennedy*, *supra*, 18 Cal.3d 335, stock purchasers sued an attorney for losses sustained on unregistered stock they had purchased from the attorney's client, asserting that the attorney had negligently advised the client that stock could be issued and sold to third persons without complying with registration requirements. *Goodman* held that the attorney was not liable to stock purchasers for negligence because the attorney's duty of care did not extend to persons with whom the client was dealing at arm's length. Moreover, there was no allegation that the attorney's advice was ever communicated to stock purchasers, or that they were intended beneficiaries of the attorney's services. (*Id*. at p. 344.)

In *Roberts v. Ball, Hunt, Hart, Brown & Baerwitz*, *supra*, 57 Cal.App.3d 104, the law firm hired to draft an opinion letter on behalf of its client in order to secure a loan had a duty to a lending company because it knew that the purpose of the opinion letter was to influence the loan company's conduct and harm to it was foreseeable. Cases such as *Biakanja* and *Roberts* "impose a duty to the third party beneficiary of legal services because that was the intention of the purchaser of the legal services—the party in privity. Thus, imposition of the duty carries out the prime purpose of the contract for services." (*Johnson v. Superior Court* (1995) 38 Cal.App.4th 463, 472.)

Here, California Western's intention in retaining Doss was to obtain a permit to sell Loan Interests in conformity with the Corporate Securities Act of 1968; Doss was not hired to opine on the soundness of the underlying investments. Thus, plaintiffs were not the intended beneficiaries of Doss's professional services.

## III. STATUTE OF LIMITATIONS

"An action against an attorney for a wrongful act or omission, other than for actual fraud, arising in the performance of professional services shall be commenced within one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the facts constituting the wrongful act or omission, or four years from the date of the wrongful act or omission, whichever occurs first." (Code Civ. Proc., § 340.6, subd. (a).) Code of Civil Procedure section 340.6 states two distinct and alternative

9

limitation periods: one year after actual or constructive discovery, or four years after occurrence (the date of the wrongful act or omission), whichever occurs first. (*Favila v. Katten Muchin Rosenman LLP* (2010) 188 Cal.App.4th 189, 223.)

The statute is tolled only during the time the plaintiff has not sustained actual injury. (Code Civ. Proc., § 340.6, subd. (a)(1).) Actual injury occurs where the plaintiff suffers any loss or injury legally cognizable as damages based on the asserted errors or omissions of an attorney. (*Jordache Enterprises, Inc. v. Brobeck, Phleger & Harrison* (1998) 18 Cal.4th 739, 743.) The fact of injury or damage need not be recognized or noticed by the plaintiff. Nor does the fact that damage may be difficult to calculate or prove prevent the legal malpractice statute of limitations from running. (*Croucier v. Chavos* (2012) 207 Cal.App.4th 1138, 1148.)

An amended complaint is considered a new action for purposes of the statute of limitations only if the claims do not relate back to an earlier, timely-filed complaint. Under the relation-back doctrine, an amendment relates back to the original complaint if the amendment: "(1) rest[s] on the same general set of facts[;] (2) involve[s] the same injury[;] and (3) refer[s] to the same instrumentality . . . ." (*Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 408–409, italics omitted.) The fictitious "Doe" defendant device permitted under Code of Civil Procedure section 474 provides a method for adding defendants after the statute of limitations has run.[3] Where a defendant is substituted in the action in place of a "Doe" defendant, the substitution relates back to the date of the filing of the original complaint for statute of limitations purposes. (*Woo v. Superior Court* (1999) 75 Cal.App.4th 169, 176 (*Woo*).) In order to take advantage of Code of Civil Procedure section 474, the plaintiff must be unaware of the Doe defendant's identity

---

[3] Code of Civil Procedure section 474 provides, "When the plaintiff is ignorant of the name of a defendant, he must state that fact in the complaint, . . . and such defendant may be designated in any pleading or proceeding by any name, and when his true name is discovered, the pleading or proceeding may be amended accordingly. . . ."

10

at the time of filing the complaint. (*Optical Surplus, Inc. v. Superior Court* (1991) 228 Cal.App.3d 776, 783–784.)

For the relation-back doctrine of Code of Civil Procedure section 474 to apply, the plaintiff must have been "genuinely ignorant" of the new defendant's identity at the time she filed her original complaint. (*Woo*, *supra*, 75 Cal.App.4th at p. 177.) "The omission of the defendant's identity in the original complaint must be real and not merely a subterfuge for avoiding the requirements of [Code of Civil Procedure] section 474. [Citation.]" (*Ibid*.) "The attempt to file an amendment under [Code of Civil Procedure] section 474 should be honest and in good faith. The question of the plaintiff's good faith in this regard is for the determination of the trial court. [Citations.]" (*Scherer v. Mark* (1976) 64 Cal.App.3d 834, 841.) "Furthermore, if the identity ignorance requirement of [Code of Civil Procedure] section 474 is not met, a new defendant may not be added after the statute of limitations has expired even if the new defendant cannot establish prejudice resulting from the delay. [Citation.] However, if the plaintiff is actually ignorant of the defendant's identity, the [Code of Civil Procedure] section 474 relation-back doctrine applies even if that ignorance is the result of the plaintiff's negligence." (*Woo*, at p. 177.)

"[W]hen the plaintiff had actual knowledge of the defendant's identity prior to filing a complaint, but has forgotten the defendant's identity at the time of filing the complaint, the plaintiff must review readily available information that discloses the defendant's identity to invoke the [Code of Civil Procedure] section 474 relation-back doctrine; otherwise the plaintiff is not in good faith using [Code of Civil Procedure] section 474. A requirement of reviewing readily available information is not a significant burden, is not inconsistent with the cases that impose no duty of inquiry on plaintiffs who never knew the defendant's identity, and assures the good faith of plaintiffs who seek to use the [Code of Civil Procedure] section 474 relation-back doctrine." (*Woo*, *supra*, 75 Cal.App.4th at p. 180.)

Here, plaintiffs causes of action accrued in late 2008 when they suffered losses as a result of the bad loans. At that time, they would have realized that they made the

investments based upon incomplete disclosures, and would have been on notice to locate those persons responsible for preparing and obtaining the permit from the Department of Corporations for the offering circular upon which they relied.  Thus, plaintiffs' third amendment was untimely as to Doss, as it was filed more than a year after plaintiffs, through the exercise of reasonable diligence, should have discovered Doss's purported error or omission in connection with the application for the permit.

## DISPOSITION

The judgment is affirmed.  Respondents are to recover their costs on appeal.

NOT TO BE PUBLISHED.


JOHNSON, J.


We concur:


ROTHSCHILD, Acting P. J.


CHANEY, J.